```
         IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
                      CRIMINAL DEPARTMENT


STATE OF KANSAS,

         Plaintiff,

vs.                                  Case No.: 12CR1074
                                     Appellate Case No.: 11837A

RHEUBEN JOHNSON,

         Defendant.


                    TRANSCRIPT OF PROCEEDINGS
                        (Motions Hearing)


         The above-captioned matter came on for a motions
hearing before the HONORABLE BRENDA M. CAMERON, Judge of the
Tenth Judicial District of Kansas, Division 13, at Olathe,
Kansas, on the 19th day of September, 2012.


APPEARANCES:

FOR THE STATE:                Mr. Keith Henderson
                              100 North Kansas Avenue
                              Olathe, Kansas 66061

FOR THE DEFENDANT:            Mr. Joseph Dioszeghy
                              130 North Cherry Street
                              Olathe, Kansas 66061


            REPORTED BY GLORIA J. O'MALLEY, CSR, CCR
```

```
 1   * * * * * * * * P R O C E E D I N G S * * * * * * * *
 2                   THE COURT:  The Court next calls State of
 3   Kansas versus Rheuben Clifford Johnson, III, 12CR1074.
 4                   MR. HENDERSON:  May it please the Court,
 5   Your Honor, the State appears by Keith Henderson.
 6                   MR. DIOSZEGHY:  May it please the Court,
 7   Mr. Johnson appears in person and by and through Joseph L.
 8   Dioszeghy, his attorney.
 9                   THE COURT:  We are set today on the
10   defendant's motion to modify bond.  I did review the motion,
11   as well as the State's response to that and the house arrest
12   report.  It is your motion, Mr. Dioszeghy, any comments or
13   arguments that you have?
14                   MR. DIOSZEGHY:  Yes, Your Honor.  Your
15   Honor, please, I put in our motion that I think the essential
16   facts that, in our view, would gravitate in favor of allowing
17   Mr. Johnson off of house arrest.  He did have a business that
18   he was trying to keep afloat prior to his arrest.  He has
19   spent several months in jail.  That business has really had
20   some problems with him not able to pursue it.  He's got a very
21   substantial child support order that he's trying to keep
22   current.  His family has helped in that regard.
23      Judge, Mr. Johnson has no previous criminal history, nor
24   is there any evidence of him ever really threatening his wife,
25   harming his wife or even saying anything remotely close to
```

1  threatening her until these allegations arose.
 2       Judge, I'm looking at the State's response, and also,
 3  Judge, while I'm on that, you know, I do object to the quote
 4  "house arrest report," because it goes well beyond a typical
 5  house arrest report.  Which in our view is intended to tell
 6  the Court how the defendant is complying with the conditions
 7  of the house arrest.  I don't believe that the house arrest
 8  officer's role should be that of an advocate.  Wherein the
 9  house arrest officer is expressing opinions or talking about
10  fears of the alleged victim, things of this nature.  That's
11  well beyond the scope of the supervision that a house arrest
12  officer is hired to do.
13       Now, I can see the State making that argument, that's
14  fine.  And they do make that argument in their response.  So
15  let me get to that.
16       Judge, one of the first things that the State tells you
17  is that Mr. Johnson, when he did have conversations with an
18  Olathe police officer, Officer Lonnie Stites, in conversations
19  that were recorded, the State tells you that Mr. Johnson spoke
20  in code.  The person that told the police that Mr. Johnson
21  would speak in code, and the person that set this whole thing
22  up and represented it as an intent on Mr. Johnson's part to
23  hire someone to kill his wife is Ronald Nodwell,
24  N-O-D-W-E-L-L.
25       Judge, Mr. Nodwell has 22 prior convictions of theft.  He

3
OFFICIAL TRANSCRIPT

Vol 9, Page 3

1  spent 25 years in prison escaping from two of them, and I tell
2  you as an officer of Court, his testimony at the preliminary
3  hearing was incredible, truly incredible, zero credibility.
4  But he's the one that told the officers that Mr. Johnson wants
5  his wife killed, and when he talks to you, he's going to talk
6  to you in code.
7       In fact, all of the taped conversations with Mr. Johnson
8  contained Mr. Johnson talking about hiring someone to haul off
9  a bunch of trash and vans and things that he does have on his
10 property, and he does talk about having his wife investigated
11 because there is still a contentious child custody issue.  But
12 never ever is there one word spoken on tape by Mr. Johnson
13 wherein he asked Mr. Lonnie Stites, who was posing as a
14 construction guy, to harm his wife.  There is never ever one
15 direct statement to that effect.
16      And when I cross-examined Officer Stites, he admitted
17 that all of the coded language and all of the understanding
18 that Mr. Johnson is really wanting to hire him to kill his
19 wife was an assumption and innuendo.
20      Now, if we looked at the statute that the State cited,
21 K.S.A. 22-2802(8), one of the first things that the statute
22 indicates that the Court should look at, of course, in taking
23 into account is the nature and circumstances of the crime
24 charged.
25      Now, I freely admit that the nature of the crime charged

1  is very serious and could cause one concern.  However, but
2  that seems to be about the only thing that the State is
3  focusing on.  They want you apparently to ignore all of the
4  other factors, and that being the weight of the evidence
5  against the defendant.
6       I represent to you, Judge, that the weight of the
7  evidence against the defendant is very slight.  Yes, the State
8  was able to sustain their burden of probable cause.  But quite
9  significantly, Judge Ruddick, after hearing the evidence,
10 reduced his bond from $350,000 down to $100,000.
11      And while it's true that he did ask -- excuse me, order
12 that all of the conditions that had been imposed when his bond
13 was originally set at a million dollars continue, but it's
14 very significant that he's had bond reductions from a million
15 down to $350,000, down to $100,000, and a real significant
16 bond reductions to $100,000 coming after evidence was heard.
17      The other factors in the statute are -- well, he is
18 lawfully present in the United States.  More importantly, his
19 family ties, employment, financial resources, character,
20 mental condition, length of residence in the community, record
21 of convictions and failure to appear.
22      Judge, Mr. Johnson has substantial family here.  He's
23 lived here for many, many years.  He has a business here, he
24 owns property here.  All of these factors would gravitate in
25 his favor as a person who could be trusted on bond and not

```
 1  likely to flee.
 2      The likelihood or propensity of the defendant to commit
 3  crimes while on release or likely to threaten, harass or cause
 4  injury to the victim, he's never done that.  He has never
 5  committed crimes, and he's never harassed or threatened the
 6  alleged victim.
 7      Judge, in our view, to keep him cooped up on house arrest
 8  really doesn't -- if he were of the mind-set to have his wife
 9  injured, I'm sure he could pick up his cell phone or a
10  telephone of any kind and make some calls and maybe try to
11  arrange for someone to hurt her or kill her while he's on
12  house arrest.  Having him cooped up on house arrest doesn't
13  ensure her safety.  All it does is keep him in a situation
14  where he just can't pursue his business, and he's just going
15  to go down the financial tubes.
16      I submit to you, Judge, that it is now his ex-wife who
17  has a motive to see that happen because of the divorce
18  situation, and the fact that this would keep him away from his
19  son.  He is attempting to work out some kind of supervised
20  time with his little boy.  They were very, very close.  He
21  hasn't seen him now in months.  And, Judge, we're not asking
22  for much here.  We're just asking that he be released from
23  house arrest.
24      Now, I don't know how that GPS works exactly, if we have
25  to be on house arrest to have that GPS.  I was under the
```

1  assumption that he could wear that GPS and they could monitor
     2  his whereabouts at all times, but he wouldn't necessarily have
     3  to be on house arrest.
     4       And, lastly, Judge, you know, drugs and alcohol have
     5  never been an issue in his life or in this case, but he's
     6  wearing a SCRAM bracelet.  That's just a needless waste of
     7  that resource.
     8       So, Your Honor, Mr. Johnson is going to defend this case,
     9  we hope, successfully.  We think that he's charged with a
    10  crime that he never ever committed or intended, and we're
    11  going to vigorously defend him.  He's not going to flee, and
    12  he's certainly not going to do anything at this juncture nor
    13  has he ever done anything to threaten his wife or ex-wife or
    14  hurt her.
    15       So, Judge, I ask that you release him from house arrest
    16  and let him off of this SCRAM bracelet and allow him to try to
    17  get out and make a living.
    18       We end up arguing the facts of this case unfortunately
    19  every time we ask for a bond reduction, and I had to do that
    20  because of this response and because of the house arrest
    21  officer throwing in a bunch of stuff about the quote,
    22  "victim's fears."
    23       Judge, we're going to let a jury decide this case, and I
    24  ask that you do give him some consideration.  As I said
    25  before, there is significant -- it is significant that Judge

1 Ruddick gave him that substantial bond reduction after
2 evidence was heard.  Thank you, Judge.
3              THE COURT:  Thank you, Mr. Dioszeghy.  Mr.
4 Henderson.
5              MR. HENDERSON:  Judge, the State is opposed
6 to removal of house arrest.  We are not opposed today of
7 removal of the SCRAM bracelet at this time.  Alcohol does not
8 appear to be an issue in this case.
9     To take Mr. Dioszeghy's comments in order, we don't know
10 much about this bee-keeping business so far.  Thus far it
11 appears to be the only factor in favor of removing the
12 defendant from house arrest, and we don't know much about it.
13 When don't know when it was started.  We don't know whether it
14 has employees, how it's functioning, whether it can be ran
15 from home.  Based upon the motion and presentation thus far
16 the Court and myself are ignorant as to how this business
17 exists and how it functions and why it could possibly outweigh
18 the weight and concerns of public safety and safety of Ms.
19 Johnson that exist in this case.
20     Based on the sparsity of information given to this Court,
21 I think we'd be very remiss to release house arrest at this
22 time.
23     Mr. Dioszeghy objects to the house arrest report.  I see
24 nothing in there inappropriate, and I'm not sure why we're
25 arguing about it.  Court Services officers, they work for the

1  Court.  They don't work for me.  They don't work for Mr.
2  Dioszeghy.  They are your officers.  They serve the Court.
3  The Court frequently asks them to make recommendations to this
4  Court, and that happens every day in any court and courtroom,
5  and I don't see anything unusual about including some facts in
6  those reports.
7        Regardless, Ms. Born is present in the courtroom, and if
8  the Court has questions of her, I'm sure she'd be willing to
9  address them, but it's a house arrest report.  We get those
10 all the time.
11       Regarding the facts of the case, Judge, we do seem to
12 take up bond at every single hearing we have.  It's modified
13 or it's reduced, and the defense wants it modified or reduced
14 the next time we're back in court.  That seems to happen every
15 time that we're here.  I don't want to relitigate the
16 preliminary hearing.  I know Your Honor wasn't the judge at
17 the preliminary hearing and without a transcript.
18       But, regardless, we're not here to relitigate the
19 probable cause finding.  The fact of the matter is, evidence
20 was presented, probable cause was found, and the defendant was
21 bound over for trial.
22       There are a couple of things that I want to touch upon.
23 There was testimony from Sergeant Stites, and the defendant
24 pointed at a picture of Ms. Johnson and he said she was the
25 project that he needed to clean up.  And there was also

1  testimony that the defendant gave Sergeant Stites $3,000 in
2  cash with another $7,000 in cash to follow for cleaning up
3  that particular project.  That was the picture.
4       The State does not believe and will never believe that
5  the defendant was giving a stranger $10,000 to clean up some
6  vans after he pointed at a picture of his ex-wife.
7       Regardless, Mr. Dioszeghy and I obviously disagree on the
8  weight of the evidence and a jury is going to have to sort
9  that out.
10      But with regard to one of the statutory factors, one of
11 the statutory factors is the weight of the evidence and
12 probable cause has been found at this point.
13      To address those statutory factors that are listed in
14 K.S.A. 22-2802:  The purpose of bond is to assure appearance
15 and protect the public safety.
16      Given that probable cause has been found, that the
17 defendant solicited two individuals to commit the crime of
18 first degree premeditated murder, I think the public safety
19 concern is paramount in this case and ought to weigh most
20 heavily in the Court's mind.
21      For that reason, I do think that is the overarching
22 statutory factor in this case, but I think there are some
23 other factors that weigh against the defendant's motion as
24 well.  I talked about that a little bit in my response.
25      I do think there is a potential for the defendant to

1  continue to threaten, harass or cause injury to Ms. Johnson in
2  this case.
3      I do agree with Mr. Dioszeghy that house arrest isn't
4  going to completely eliminate those fears.  But then again the
5  State has never said house arrest is a good idea in this case.
6  We thought the defendant ought to be in jail, but we did lose
7  that argument.
8      We do contend at this point that removing him from
9  further supervision and taking him off of house arrest is not
10 a sound idea.
11     So that would be my position, Judge.  If the Court has
12 questions, I'd be happy to address those.
13              THE COURT:  Thank you.  Ms. Born, do you
14 have anything to add?
15              COURT SERVICES OFFICER:  Yes, ma'am.  May
16 it please the Court, Jolene Born from house arrest.  I have
17 pretty much stated in my report that's Ms. Johnson is fearful.
18 We report what is given to us.
19     As far as employment, I didn't take it -- it was reported
20 to our staff that his job was pretty much nonexistent.  And at
21 this time we worked with him to get that back and running, but
22 it's been at his residence.  He has not stated he needs to go
23 farther out.
24     The other day we did talk about if that event should
25 happen, we would need to know where he needs to go.  It's not

11
OFFICIAL TRANSCRIPT

Vol 9, Page 11

1  that employment is unavailable or not an option, we just need
     2  to know the location.
     3      Secondary, SCRAM was mentioned.  I'm not seeing an order
     4  for SCRAM he is on breathalyser testing.  So if an order for
     5  SCRAM is removed, I don't know where that's coming from, but
     6  the breathalyser testing would be appropriate notification on
     7  that.
     8                  THE COURT:  Okay.  Thank you.
     9                  MR. DIOSZEGHY:  Your Honor, may I make a
    10  short rebuttal argument?
    11                  THE COURT:  Short, yes.
    12                  MR. DIOSZEGHY:  Judge, Mr. Johnson has a
    13  bee extermination business.  And while years ago they did have
    14  employees and all that, it's now basically down to him and his
    15  family.  He does need to go out.  He does need to go out and
    16  seek out, number one, seek out customers; and, number two, to
    17  service those customers.  And house arrest just makes it
    18  virtually impossible for him to do that.
    19     Your Honor, the State has already argued that this man
    20  belongs in jail.  The presumption of innocence is still, I
    21  hope, intact.  And as I indicated earlier, he was charged
    22  early on with one count of a level 3 and put a million dollar
    23  bond on him.  But there are several cases right here in
    24  Johnson County where people are charged with a level 1 with
    25  lower bonds.  I know of two that have one who has a $15,000

1   bond, and the other one has a $150,000.  They certainly
2   weren't a million.
3        As This idea that the defendant is going to harm his wife
4   and threaten her or harass her is not a fact as presented by
5   the house arrest officer, it's an assumption.  It is a quote
6   "concern," and it's very significant that Officer Stites
7   clearly said, "Everything about him wanting to hire me to hurt
8   his wife, kill his wife is a matter of assumption and
9   innuendo."  There is nothing in the record of any direct
10  threat.  Thank you.
11                  THE COURT:  Thank you, Counsel.
12       I am not going to modify this man's bond.  The motion
13  will be denied except for the breathalyser machine that can be
14  removed.  I will authorize that.  So house arrest with the GPS
15  monitoring will continue.
16       I'm concerned, obviously, about the nature of this case
17  and crimes charged.  I'm concerned about public safety.  Judge
18  Ruddick has already found probable cause to believe that these
19  crimes occurred and bound this man over for trial, so the
20  motion will be denied.
21       Are you ready to have this set for jury trial?
22                  MR. DIOSZEGHY:  Your Honor, if we can have
23  a setting for motions, and I have filed another motion to
24  extend the time.  Do you want to take that up today?  It's set
25  for October 10th right now for motions.

```
 1                    THE COURT:  I see October 10 at two that
 2    you're set for defendant's motions.
 3                    MR. DIOSZEGHY:  That's right, and we are in
 4    the process of pursuing some discovery of phone records and
 5    that kind of thing.  It's going to take some time to get
 6    those, and I'm asking for some more time to file on the
 7    motions and also to push the hearing out so that we get those
 8    records, get our motions on file and give the State adequate
 9    opportunity to respond to those motions prior to --
10                    THE COURT:  Any objection?  I'm sorry, I
11    didn't mean to interrupt.  Mr. Henderson, do you have an
12    objection?
13                    MR. HENDERSON:  Judge, so long as we're
14    clear that the time from arraignment on August 22nd to
15    whenever we hear those motions goes to the defense and not
16    charged to the State, then we have no objection.
17                    MR. DIOSZEGHY:  We understand that.
18                    THE COURT:  Okay.  Thank you.  I do see
19    your motion, and I will continue the motion setting, which is
20    currently October 10, 2012.  The time, continuance from
21    today's date to the motion hearing, will be assessed against
22    the defense, and I believe you were asking for 45 to 60 days;
23    is that correct?
24                    MR. DIOSZEGHY:  That's correct.  Yes,
25    that's correct.
```

```
 1                      THE COURT:  How much time should I set
 2   aside for the motions, this hearing?
 3                      MR. DIOSZEGHY:  Approximately, two hours.
 4                      THE COURT:  How about Wednesday, November
 5   14th at 1:30.
 6                      MR. HENDERSON:  I'm available at that time,
 7   Judge.
 8                      MR. DIOSZEGHY:  Judge, I'm available.  I'm
 9   just concerned that we won't have all the records that we need
10   to subpoena and to get into place, but we can go ahead and set
11   it for that now, and if we have a problem, we can bring that
12   to everyone's attention.
13                      THE COURT:  I can give you one more week,
14   but that is 60 days -- between 45 and 60 days that you
15   requested.
16                      MR. DIOSZEGHY:  I appreciate that.
17                      THE COURT:  Will that work, or do you want
18   to go another week?
19                      MR. DIOSZEGHY:  Let's go ahead and stay
20   with the 14th.
21                      THE COURT:  November 14th at 1:30.  The
22   defendant will be ordered to appear.  Can you have your
23   motions on file, Mr. Dioszeghy by October 26?  That's six
24   weeks out.
25                      MR. DIOSZEGHY:  October 26th; okay.
```

```
 1                    THE COURT:  Response, if any, November 8th
 2    Mr. Henderson, does that work for you?
 3                    MR. HENDERSON:  That will be fine, Your
 4    Honor.
 5                    MR. DIOSZEGHY:  Your Honor, may I ask one
 6    other thing?
 7                    THE COURT:  Yes.
 8                    MR. DIOSZEGHY:  Would there be a time prior
 9    to that setting that Your Honor would consider looking at this
10    house arrest one more time?
11                    THE COURT:  No.  Frankly, he's lucky to be
12    on house arrest given the charges and what I have heard today.
13    Judge Ruddick has made his finding.  I think it was quite
14    reasonable that he reduced it, but I'm not going to modify it
15    before we hear any evidence in the case.
16                    MR. DIOSZEGHY:  Thank you.
17                    THE COURT:  Anything further then?
18                    MR. HENDERSON:  No, Your Honor.
19                    THE COURT:  Thank you very much.
20                  * * * * * * * * * * * * * *
21
22
23
24
25
```

```
 1                        C E R T I F I C A T E

 2

 3   STATE OF KANSAS   )
 4   JOHNSON COUNTY    )

 5

 6              I, Gloria J. O'Malley, a certified
 7   shorthand reporter, and the regularly appointed,
 8   qualified, and Acting Official Reporter of Division
 9   No. 13 of the Tenth Judicial District of the State of
10   Kansas, do hereby certify that as such Official
11   Reporter, I was present at and reported in machine
12   shorthand the above and foregoing proceedings.
13              I further certify that a transcript of
14   my shorthand notes was typed, and that the foregoing
15   transcript is a true and correct transcript of my
16   notes in said case to the best of my knowledge and
17   ability,
18              SIGNED, OFFICIALLY SEALED, AND FILED
19   WITH THE CLERK OF THE DISTRICT COURT OF JOHNSON COUNTY
20   KANSAS.
21
22
23
24                         Gloria J. O'Malley, CSR No. 1383
25
```

*[Signature and seal of Gloria J. O'Malley, Certified Shorthand Reporter, State of Kansas]*