```
         IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
                       CRIMINAL DEPARTMENT


STATE OF KANSAS,

         Plaintiff,

vs.                             Case No.: 12CR1074
                                Appellate Case No.:  11837A

RHEUBEN JOHNSON,

         Defendant.



                   TRANSCRIPT OF PROCEEDINGS
                        (Motion Hearing)



      The above-captioned matter came on for a motions
hearing before the HONORABLE BRENDA M. CAMERON, Judge of the
Tenth Judicial District of Kansas, Division 13, at Olathe,
Kansas, on the 18th day of October, 2012.


APPEARANCES:

FOR THE STATE:            Mr. Keith Henderson
                          100 North Kansas Avenue
                          Olathe, Kansas 66061

FOR THE DEFENDANT:        Mr. Joseph Dioszeghy
                          130 North Cherry Street
                          Olathe, Kansas 66061


           REPORTED BY GLORIA J. O'MALLEY, CSR, CCR
```

```
1   * * * * * * * * P R O C E E D I N G S * * * * * * * *
2                   THE COURT:  The State of Kansas versus
3   Rheuben Johnson, III, 12CR1074.
4                   MS. JONES:  The State appears by Heather
5   Jones.
6                   MR. DIOSZEGHY:  May it please the Court,
7   Mr. Johnson appears in person in custody and by and through
8   Joseph L. Dioszeghy, his attorney.
9                   THE COURT:  We are currently set for
10  November 14th at 1:30 for defense motions.  The State filed a
11  motion to revoke bond.  I did issue a warrant on that, and
12  he's in custody on that.  He will be ordered to appear at the
13  next setting, November 14th at 1:30.
14      The motions are due October 26th with response November
15  8th.  Do you have anything further, Mr. Dioszeghy?
16                  MR. DIOSZEGHY:  Your Honor, may I be heard
17  on motion to review bond?
18                  THE COURT:  I will set this to the heel so
19  that you will have time to do that.  So I will set this to the
20  heel.
21                  (Whereupon, a recess was taken in this
22  case.)
23                  THE COURT:  The Court will recall State of
24  Kansas versus Rheuben Clifford Johnson, III.  Parties appear
25  as before, and this is currently set for motions November
```

14th.

Your motion on bond, Mr. Dioszeghy?

MR. DIOSZEGHY: Your Honor, the State filed a motion to revoke his bond and a warrant was issued contemporaneously with that motion, and Mr. Johnson was arrested. A new bond was set at $300,000 again, which was where the bond was prior to Judge Ruddick reducing it, I think the second time around.

Judge, the allegations are that Mr. Johnson was on house arrest, and on some occasions he was out of the area where he was supposed to be.

I think the most egregious allegation occurred on November, 7th. It is alleged after returning from church, he was with his girlfriend actually for about four hours. It's my understanding, Judge, that he and his house arrest officer had a pretty extensive discussion. She told him all the places that he could go, and as you can see, they were extensive.

She also told him under no conditions can you go to other places. And those other places mainly dealt with going around the alleged victim's home, her place of employment, or going anywhere that would be interpreted as a threatening place for him to be.

On October 7th, my understanding, and I realize that relates to Mr. Johnson and his significant other, that he went

```
 1  to her house because she was having trouble with her furnace,
 2  and he went there with the intention of helping her to try to
 3  get that in order before it gets cold.  The time got away from
 4  him, and he freely admits that he made a mistake.  He did not
 5  call ahead of time.  He did not call while he was there.  He
 6  was just basically focused on helping her out.  She's a nurse
 7  at the KU Medical Center.  She's not someone who would lead
 8  him to go astray to do criminal wrongdoing or anything of that
 9  nature.  Basically, Mr. Johnson made a mistake here.
10       Judge, I'm asking that you reinstate the bond that he was
11  on, put him back on house arrest.  I've been out to talk to
12  him, and I've told him, you know, "Rheuben, it doesn't matter
13  if you were in church with your priest, if you're out of
14  assignment, if you're not where you're supposed to be, you're
15  in violation," and he understands that.
16       Judge, in our view it is a mistake.  He's ready to admit
17  that.  But he was on a quote, "altruistic mission."
18  He was not on a mischievous mission.  He was not doing
19  something unlawful or dangerous or threatening to anyone.  He
20  was trying to help his girlfriend.  That's our request.  I
21  would ask that you briefly let Mr. Johnson and his girlfriend
22  kind of tell you what happened that day.
23                THE COURT:  Go ahead, Mr. Johnson.
24                THE DEFENDANT:  When I was on the
25  breathalyzer, they gave me really specific instructions that I
```

1  had to be on the property to be there, to do the blow tests,
2  and then when the breathalyzer was gone, she really implied
3  that, made it very clear that I was not to go to the witness's
4  place.  She asked me three times, "Do you know where you're
5  not supposed to go?"  Which to me implied that I was going to
6  have more freedom to go different places, and I said "Yeah, I
7  am not going to go by anywhere else."
8     What Joe had said is that I had gone by, and when I was
9  in jail some people had talked her into replacing her air
10 conditioner and heater and put this big thing outside and done
11 some duct work and left it completely undone.  We had had a
12 freeze the day before, and that was the primary reason for
13 stopping by there.
14    We did also went over to the next block, had chili over
15 there with one of her friends.  The house arrest people, they
16 had my cell number.  We did have a problem with the
17 breathalyser one time at two o'clock in the morning they were
18 calling because I hadn't blown a test since like midnight, and
19 they called my mom.  After some conversation with them the
20 next day, they basically told me to break the rule that they
21 already had for me which was to go ahead and unplug the
22 breathalyzer, take it upstairs and put it beside the bed.
23 With a little bit of conversation and understanding, that's
24 the way we worked out the problem.
25    Here after the breathalyzer came off I really thought

1   that they didn't really have much of a problem if I went a few
2   other different places.  In fact, a couple of the places were
3   a given.  I had to stop by and get gas and things like that
4   that weren't on the list, the main primary stops that I was
5   supposed to go by.
6       Even lastly, the very last day, I went in there to talk
7   about this incident, and she wrote me out a new schedule, and
8   as I was leaving I told her before I went up to see my
9   therapist, Michelle Whitaker, and told her "I need gas."  She
10  said "Well, go ahead and get gas."  Well, that's not on her
11  written schedule either.
12      So, again, she's still implying that there were places I
13  was supposed to go on that weren't on the schedule.  Although,
14  now I do understand I'm not to go anywhere that's not on her
15  written schedule.  My family and Kat have all worked really
16  hard to get me out of jail.  I spent my time not just goofing
17  off, sitting around.  I've worked on mowing the property,
18  cleaning it up, getting equipment ready to sell, repay my
19  family.  I've worked really hard since I've been out.  If I
20  can please have an opportunity to keep doing so, I promise I
21  won't let you down, house arrest people or my family.
22              THE COURT:  Thank you.  Ms. Jones, your
23  position?  I don't want to hear from his girlfriend.  Ms.
24  Jones, your position?
25              MS. JONES:  Judge, the state would be

6
OFFICIAL TRANSCRIPT

Vol 15, Page 6

1    opposed to the defendant's release.  The State believes it was
2    clear what the defendant, where he could and could not go.  I
3    don't think there was any ambiguity in that.  Jolene Born, the
4    house arrest officer is here, if you would like to hear from
5    her.
6                    THE COURT:  I do, Ms. Born?
7                    COURT SERVICES OFFICER:  May it please the
8    Court, Jolene Born, house arrest.
9        The first thing I want to address is that Mr. Johnson was
10   very clearly told he was not allowed to go places, as well as
11   to go to places on his schedule, which he is handed a copy of.
12   If he is allowed to leave, he is given a time to be there and
13   there is a time he was allowed to be back.
14       As far as getting gasoline, we allow time for gasoline,
15   but he can't get to other locations without getting gasoline.
16   We don't permit them to go inside and pay with cash.  We
17   clarified that.
18       Another thing is the story today being presented by what
19   the client was doing on that day has changed.
20       The day he came and met with me, which I had written in a
21   statement, he talked about watching a grandchild at somebody's
22   house.  Nothing about a furnace.  He also went next door to
23   get a bite of chili at somebody's house.  So today's story is
24   different from that day.
25       With all that information, we request that he stay in

1  custody.
2           THE COURT:  The motion to reinstate bond
3  will be denied.  I think it was previously set at $350,000
4  cash or surety.  I think it will remain there.  I think it is
5  appropriate given the charges here, solicitation to commit
6  murder.  I am concerned about that, and I'm concerned about
7  his rationalization today about why he can bend the rules and
8  why it's different, and his changing of stories is very
9  concerning to me, so I think the bond is set perfectly.  The
10 motion to modify or reinstate is denied.
11     We are currently set November 14th.  The defendant is
12 ordered to appear at that time, 1:30 p.m., and we'll take a
13 short recess.
14              * * * * * * * * * * * * *

C E R T I F I C A T E

STATE OF KANSAS   )
JOHNSON COUNTY    )

         I, Gloria J. O'Malley, a certified shorthand reporter, and the regularly appointed, qualified, and Acting Official Reporter of Division No. 13 of the Tenth Judicial District of the State of Kansas, do hereby certify that as such Official Reporter, I was present at and reported in machine shorthand the above and foregoing proceedings.
         I further certify that a transcript of my shorthand notes was typed, and that the foregoing transcript is a true and correct transcript of my notes in said case to the best of my knowledge and ability,
         SIGNED, OFFICIALLY SEALED, AND FILED WITH THE CLERK OF THE DISTRICT COURT OF JOHNSON COUNTY KANSAS.



Gloria J. O'Malley, CSR No. 1383