**FILED**

SEP 1 4 2016

DOUGLAS T. SHIMA
CLERK OF APPELLATE COURTS



No. 13-110837-A

# IN THE COURT OF APPEALS
# OF THE
# STATE OF KANSAS

---

### THE STATE OF KANSAS
Plaintiff / Appellee,

-vs-

### RHEUBEN JOHNSON,
Defendant / Appellant,

---

### BRIEF OF APPELLANT

---

Appeal from the District Court of Johnson County, Kansas
The Honorable Brenda Cameron, Judge of the Johnson County District Court

District Court Case No. 12CR1074

---

Rheuben Johnson # 106724
pro-se
EDCF, PO Box 311
El Dorado, KS 67042-0311

Oral argument: 30 minutes

# Table of Contents

Nature Of The Case.................................................................................................1

Statement Of The Issues.........................................................................................1

Statement Of The Facts...........................................................................................1

    Relationship with ex-wife.....................................................................................1

    Investigative work...............................................................................................1

    Nodwell (RN)(count 2)........................................................................................2

    Police report.......................................................................................................3

    Det. Stites (LS)(count 1)....................................................................................4

    Preliminary hearing.............................................................................................7

    Trial....................................................................................................................7

Argument.................................................................................................................8

    ISSUE 1. Vague and Overbroad. The legislature's failure to define conduct which constitutes "commanding, encouraging or requesting" renders the statute impermissibly vague and overbroad, infringing upon Johnson's protected First Amendment Rights; thus, convictions are constitutionally infirm and must be reversed. ...................8

        State v Williams,298 Kan 1075(2014)..........................................................8

        State v Gomez, 290 Kan 858 (2010)..............................................................8

        Fourteenth & First Amendment United States Constitution..............................9

        State v Coman, 294 Kan 84 (2012)................................................................9

        Smith v Martens, 279 Kan 242 (2005)............................................................9

    A. KSA 21-5303 is Unconstitutionally Vague...................................................9

        State v Kirby,222 Kan 1 (1977)......................................................................9

        City of Wichita v Hughes,12 Kan App 2d 621(1988)........................................9

        US v Harriss, 347 US 612 (1954).................................................................9

        KSA 21-3438 (1994).....................................................................................9

        State v Bryan, 259 Kan 143 (1996)...............................................................9

        Jonathan Swift's A Modest Proposal (1729)....................................................9

        Fifth Amendment, United States Constitution.................................................10

    Consider next: 1) KSA 21-5303 fails the 1st prong of the vagueness test, 2) also the 2nd, and 3) allows conviction if nothing was communicated. 4) Here, there was no obvious violation. ...............................................................................................10

        City of Lincoln v Farmway Co-Op,Inc.,298 Kan 540 (2013)............................10

    1. KSA 21-5303 fails the 1st prong—must give fair notice—due to, in part, the criminalization of "encouraging" which: a) cannot be defined legally, b) is defined with equally vague words, c) is not clear because it's in a dictionary, d) should be defined. Statute has: e) no clear line to separate the unlawful, f) no objective standards exist. g) People must guess. ....................................................................10

        State v Kirby, 222 Kan 1 (1977).................................................................10

    a. "Encourage" is not and cannot be defined legally.......................................10

        *"There appear to be no Kansas cases expressly defining 'encouragement.'"*..........10

        State v Geist, No.74,916,unpub (ACtKS,Dec24,1997) Appendix#1.............10

        *"Congress has not defined 'encourages'...its meaning is ambiguous."*...................10

        US v Delgado-Ovalle, No. 13-20033-07,Lex(USDCtKS,Dec30,2013) Appendix #2......10

        State v McCune, 189 Neb 165 (1972)..........................................................11

        Reproductive v Webster, 662 F.Supp 407 (USDCtM0,1987).........................11

Cramp v Bd of Public Inst...,368 US 278 (1961).............................................................11

B.B.& T. Ins. Servs. v Rutherfoord, 80 VA.Cir 174 (2010)............................................11

Amalgamated v Donovan,767 F.2d 939 (USACt,1985)..................................................11

Yarborough v Warren,383 F.Supp. 676 (USDCtMI,1974).............................................11

N.O.W. v Opereration Rescue, 37 F.3d 646 (USACt,1994)...........................................11

**b. Words that define "encourage" are equally vague**...................................................11

Black's Law Dic. (6ed,1990)..............................................................................................11

Delgado,supra <US v Delgado-Ovalle, No. 13-20033-07,Lex(USDCtKS,Dec30,2013)>..........11

PerfectVision Mfg v PPC Broadband,Inc.,No.4:12CV00623,Lexis(USDCtAR,Aug29, 2014)...11

Cramp, supra <Cramp v Bd of Public Inst...,368 US 278 (1961)>........................................11

US v Andrews, 790 F.2d 803 (10Cir,1986)....................................................................11

US v Breque, 964 F.2d 381 (5Cir,1992)........................................................................11

Paroli v Bolton,57 Misc.2d 952(SCtNY,1968)..............................................................11

State,Dep't of Law & Public Safety,etc v State Troopers, 179 NJ Super. 80 (SCtNJ,1981)..11

**c. "Encourage" is not clear just because it is commonly used or it is in a dictionary.** 11

State v Adams,254 Kan 436 (1994)..............................................................................11

People v McCaughan, 49 Cal.2d 409 (SCtCA,1957)....................................................12

State v Lackey, 232 Kan 478 (1993)............................................................................12

**d. Even if "encouraging" could be defined legally, it is so misunderstood that it must be defined within the statute with non-vague terms**.......................................................12

Farmway,supra <City of Lincoln v Farmway Co-Op,Inc.,298 Kan 540 (2013)>.....................12

Entm't Software v Foti,451 F.Supp.2d 823 (USDCtLA,2006)........................................12

**e. KSA 21-5303 does not provide a line between the illegal vs: discussion, an assumed solicit or encourage, a statement of what "could be done," or other free speech. A separating line must be clear within the statute; prohibited acts must be specific**......12

State v Meinert, 225 Kan 816 (1979)............................................................................12

State v Carpenter, 231 Kan 235 (1982)........................................................................12

Ruff v City of Leavenworth, 858 F.Supp. 1546(USDCtKS,1994)..................................12

Altamont v Finkle, 224 Kan 221(1978).........................................................................12

State v Sharp,340 P.3d 1235, No.110,845, unpub(ACtKS,Dec19,2014).......................12

Wood v Utah Farm Bureau Ins.Co., 2001 UT App 35 (2001)........................................13

**f. There must be an objective standard when a law is based on how one individual perceives an act. KSA 21-5303 has none**.......................................................................13

Howard v State ,272 GA 242 (SCt,2000)......................................................................13

Comprehensive Health of Planned Parenthood... v Phil Kline,287 Kan 372 (2008)......13

Farmway,supra <City of Lincoln v Farmway Co-Op,Inc.,298 Kan 540 (2013)>.....................13

**g. The common person cannot understand what conduct KSA 21-5303 prohibits, esp when such is left to the sensibilities of another individual.** ..........................................13

**2. KSA 21-5303 fails the 2nd prong—must be precise to protect against arbitrary and discriminatory enforcement. Statute: a) is subjective, b) lacks objective modifiers, c) lacks objective standards for "encouraging"— a mental impression.** ...................13

Grayned v City of Rockford, 408 US 104 (1972)...........................................................13

Thelen v State, 272 GA 81 (2000)................................................................................13

Kolender v Lawson,461 US 352 (1983).......................................................................14

**a. KSA 21-5303 is determined by the listener's subjective perception, thus vague.** . 14

Farmway,supra <City of Lincoln v Farmway Co-Op,Inc.,298 Kan 540 (2013)>.....................14

City of Lawrence v Gilmore, 304 P.3d 363, No.108,527,unpub (ACt KS,Aug 2,2013)...14

Bryan, supra &lt;State v Bryan, 259 Kan 143 (1996)&gt;...........................................14

    **b. KSA 21-5303 lacks objective modifiers—intent or other**...........................................14

        State ex rel. Smith v Fairmont Foods Co.,196 Kan 73 (1966)...........................................14

        Adams, supra &lt;State v Adams,254 Kan 436(1994)&gt;...........................................14

        McCaughan,supra &lt;People v McCaughan, 49 Cal.2d 409(SCtCA,1957)&gt;...........................................15

    **c. "Encouraging" is a mental impression that requires definition as to how much, how long, or what it must be—an objective standard.**...........................................15

        Independence v Richards, 666 SW.2d 1 (ACtM0,1983)...........................................15

**3. In section (b) of KSA 21-5303, one can be guilty without having communicated anything**...........................................15

        KSA 21-5221...........................................15

**4. There was no clear violation of the statute in Johnson's case—impressions only**....16

        American Heritage Dictionary,4th ed...........................................16

**5. Several states have combated the problem associated with the KS solicitation statute**...........................................16

        Colo.Rev.Stat.18-2-301(1)...........................................16

        Tex.Stat.Ann 15.03(b)...........................................16

**B. KSA 21-5303 is Unconstitutionally Overbroad--facially, applied to Johnson, substantial-- in that it infringes upon his First Amendment rights to free speech and 1) does not contain required imminence, 2) is too restrictive, and 3) prohibits speech which tends to encourage.**...........................................17

        Hughes,supra &lt;City of Wichita v Hughes,12 Kan App 2d 621(1988)&gt;...........................................17

**1. Encouraged acts are not always imminent as required**...........................................17

    *"'Encouraging' and 'promoting'...do not necessarily imply incitement to immediate action... [such law] is unconstitutionally overbroad..."*...........................................17

        National Gay Task Force v Board Education, 729 F.2d 1270(10thCir,1984)(SCtUS affirmed)17

        Brandenburg v Ohio, 395 US 444 (1969)...........................................17

        Hess v Indiana, 414 US 105 (1973)...........................................17

        State v Huffman, 228 Kan 186 (1988)...........................................17

**2. By criminalizing "encouraging," KSA 21-5303 is more restrictive than needed. With no limitations, a multitude of protected possibilities, including free speech, are prohibited.**...........................................17

    **a. KSA 21-5303 did not need to prohibit "encouraging."**...........................................17

        State v Sexton, 232 Kan 539 (1983)...........................................17

        KSA 21-5111(cc)...........................................17

        Ashcroft v ACLU,542 US 656 (2004)...........................................17

        Yates v US, 354 US 298 (1957)...........................................17

    **b. Limiting standards could have been used in KSA 21-5303**...........................................18

        US v Stevens, 559 US 460 (2010)...........................................18

    **c. Overbreadth is often based upon very few scenarios**...........................................18

        State v Final Exit Network, No.A13-0563, unpub. (ACtMN,Sep30,2013)...........................18

        Dissmeyer v State, 292 Kan 37 (2011)...........................................18

        State v Conley, 216 Kan 66 (1975)...........................................18

        Finkle, supra &lt;Altamont v Finkle, 224 Kan 221(1978)&gt;...........................................18

        Carpenter, supra &lt;State v Carpenter, 231 Kan 235 (1982)&gt;...........................................18

        State v McAffry,263 Kan 521(1997)...........................................18

        City of Junction City v Mevis, 226 Kan 526 (1979)...........................................18

d. A statute that punishes privileged conduct is overbroad regardless if defendant engaged in such..................................................................................................18

    NAACP v Button, 371 US 415 (1963)........................................................18

    Dissmeyer, supra <Dissmeyer v State, 292 Kan 37 (2011)>.............................18

    Wichita v Wallace, 246 Kan 253 (1990)....................................................18

e. What could encourage a felony is limited only by what an over-zealous, anxious-to-convict law enforcer or eager-to-sue civilian decides to concoct or pursue. .......18

3. KSA 21-5303 criminalizes speech—eg discussion—which merely "tends to encourage" the unlawful end result. ...........................................................19

    *"The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.".*...........................................................................19

    Ashcroft v Free Speech, 535 US 234 (2002) Appendix 3-4...........................19

    Entm't v Foti, supra <Entm't Software v Foti,451 F.Supp.2d 823 (USDCtLA,2006)>..............19

    Marquette Law Review, Winter 2002, 86 Marq. Law.Rev.501(2002)..............................19

    State v Gains, 431 So.2d 736(DACtFL,1983).................................................19

    First Amendment, US Constitution...........................................................19

ISSUE 2. Johnson's charges were multiplicious; convictions violate Double Jeopardy Clause. They exceed the allowable unit of prosecution—an ongoing course of conduct. ..20

    State v Gomez, 290 Kan 858 (2010)...........................................................20

    State v Nguyen, 285 Kan 418 (2007).........................................................20

    State v Simmons, 282 Kan 728(2006).........................................................20

    Fifth & Fourteenth Amendment, US Constitution;10 KS Bill of Rights..........................20

    State v King, 297 Kan 955 (2013)............................................................20

    State v Schoonover, 281 Kan 453 (2006)....................................................21

    Harrell v Israel, 478 F.Supp. 752 (E.D.Wis.1979).........................................21

A. Unit of prosecution cases—such as Johnson's with violations of just one statute—are to have multiplicity resolved by using only one relevant inquiry: the legislative intent as shown by the statute's unit of prosecution (u.o.p). .....................................21

    *"The sole issue in [a case with "multiple violations of the same statute"] is identification of the 'allowable unit of prosecution.'"* ...........................................21

    Schoonover, supra <State v Schoonover, 281 Kan 453 (2006)>......................................21

    US v Universal C.I.T. Credit Corp., 344 US 218 (1952)................................................21

    Sanabria v US, 437 US 54 (1978) Apendix #5.................................................21

1. U.O.P cases are not to use the Schoonover "same conduct" multiplicity test..........21

    State v Calderon-Aparicio, 44 Kan. App. 2d 830 (2010)....................................21

    Thomas, 47 U.Pitt.L.Rev.1.....................................................................21

    State v Robinson, 303 Kan 11 (2015).........................................................21

2. The distinctions of the u.o.p. type of case are explained in Schoonover:................21

    Schoonover, Appendix # 6-7 <State v Schoonover, 281 Kan 453 (2006)> ..........................21

3. Thus note, Schoonover is a "multiple description"(m.d.) case..............................22

    Albernaz v US, 450 US 333 (1981)...........................................................22

    US v Weathers, 186 F.3d 948 (DCCir,1999)................................................22

4. Focusing on legislative intent makes sense for a unit of prosecution case;...........22

    State v Gheno, No.85,619 unub. (ACtKS,Feb1,2002).................................................22

    US v Baily, 444 US 394 (1980).................................................................22

**B. In an ongoing-type of conduct—a course of conduct—different facts and repeated impulses are inherently expected. If courts arbitrarily set criteria—eg "30 days passed"—they impermissibly create a new u.o.p which lacks "fair notice" and violates Due Process.** ...............................................................22

> *"A course of conduct involves a number of acts. To hold that proof of a different act under a separate count establishes a separate offense would destroy the principle that a course of conduct is punishable as only one offense."*...................22

US v Jones, 533 F.2d 1387 (6Cir,1976)................................................22

Thomas,47 U.Pitt.L.Rev.1 (1985) "A Unified Theory of Multiple Punishment"..............22

State v Adel,136 Wn.2d 629 (SCt,1998). Appendix #8, #9 .........................22

In re Snow, 120 US 274 (1887)..................................................................23

**The four parts** of the multiple description cases' "same conduct" inquiry are discussed below. This also shows how, here, such inquiry is inappropriate because the legislature did not indicate that any part of such an inquiry is the unit of prosecution for KSA 21-5303. ...23

**1. Time breaks**................................................................................23

Jones, supra <US v Jones, 533 F.2d 1387 (6Cir,1976)>....................................23

**2. Location breaks**.........................................................................23

Adel, supra <State v Adel,136 Wn.2d 629 (SCt,1998)>..................................23

**3. Impulse**......................................................................................23

State v Davis, No.109,290 unpub.(ACtKS,Aug15,2014)............................23

State v Harris, 284 Kan 560 (2007)..........................................................23

**4. Relationship**..............................................................................24

State v Ulteras, 296 Kan 828 (2013) citing Bisschoff.......................................24

Adel, supra <State v Adel,136 Wn.2d 629 (SCt,1998)>..................................24

Robinson, supra <State v Robinson, 303 Kan 11 (2015)>...............................24

**C. The "allowable u.o.p" for KSA 21-5303 is an ongoing course of conduct because: 1) -ing elements are present participles, 2) -ion means ongoing, 3) "another person" clearly includes many, and 4) the number of felonies solicited is the u.o.p.** 24

Thomas, 47 U.Pitt.L.Rev.1 (1985).........................................................25

**1. Present participles (-ing) verbs are required elements of the proscribed illegal conduct; eg,"requesting." Thus, the legislature authorized and required ongoing conduct and intent. But the unit of prosecution is not based upon such.** .................25

www.oxforddictionaries.com/us/.............................................................25

KSA 21-5415.......................................................................................25

King, supra <State v King, 297 Kan 955 (2013)>........................................25

KSA 21-5111(ff)...................................................................................25

**a. "[The US Supreme Court] does not consider grammar a mere technicality [and] has stated that 'Congress' use of a verb tense is significant.'"** ...............................25

US v Wilson, 503 US 329 (1992)............................................................25

US v Ketchum, 201 F.3d 928 (7Cir,2000)..................................................25

Detention of JR, 912 p.2d 1062 (ACtWN,1996)........................................26

State v Sprung, 294 Kan 300 (2012)........................................................26

American Gas v SEC, 134 F.2d 633 (USACtDC,1943)................................26

McClanahan v State, 324 SW. 3d 692 (ACtAR,2009)................................26

**b. One act is not enough to meet a present participle's (p.p's) "ongoing" definition.**26

JR, supra <Detention of JR, 912 p.2d 1062 (ACtWN,1996)>...........................26

Sonitrol v Seattle, 528 P.2d 474 (SCtWN,1974).........................................26

Maziarka v Colvin, 983 F.Supp.2d 991 (USDCtIL,2013)...............................26

San Diego Baykeeper v US D0D, No.02-CV-0499, Lexis (USDCtCA,May6,2010)........26

**c. Current action is required by a p.p with more foreseen..........................26**

Verizon v Hopewell, 26 NJ Tax 400 (2000)..................................................26

Ketchum, supra <US v Ketchum, 201 F.3d 928 (7Cir,2000)>...............................26

US v Hull, 456 F.3d 133 (3Cir,2006).........................................................26

Bosserman v Hayes, 89 Va.Cir. 84 (CCtVA,2014)..........................................26

McMahon v Carroll, No.04-C-384, Lexis (USDCtWI, Mar9,2007)...........................26

**2. The suffix -ion indicates ongoing activity, eg solicitation........................26**

Amer.Her.Dic....................................................................................26

**3. "Another person" encompasses many individuals; eg RN,LS, and RP. ................26**

**a. The conspiracy statute clearly shows that "another person" can include many individuals......................................................................................27**

US v Fishman, 645 F.3d 1175 (10Cir,2011)..................................................27

KSA 21-5302.....................................................................................27

**b. Throughout KSA, "individual" and "person" are used together within a statute(s)..27**

KSA: 21-5928; 58-4723; 21-5417; 21-6815 ..................................................27

**c. KS 77-21 Rules of Construction (3)......................................................27**

Erhart v Kaw, 91 Kan 914 (1914)..............................................................27

Fidelity v Morris, 130 Kan 290 (1930)........................................................27

State v Smouse, 49 Iowa 634 (1878)..........................................................27

**d. Definitions................................................................................27**

Anderson's Law Dictionary.....................................................................27

Black's Law Dictionary.........................................................................27

In re Spoonemore, No.05-17380, unpub. (USBankRCtKS,May21,2007)....................27

Balentine's Dictionary.........................................................................27

Lower v Bd of Dirs, 274 Kan 735 (2002).......................................................27

Extendicare v State...Health, 216 Kan 527 (1975)...........................................27

Town of Mesilla v Las Cruces, 898 P.2d 121 (ACtNM,1995)..................................27

**e. Platform solicitation. ....................................................................27**

King, supra <State v King, 297 Kan 955 (2013)>..............................................27

People v Rubin, 158 Cal.Rptr 488 (ACtCA,1979)..............................................27

State v Schleifer, 121 A.805 (SCtCT,1923)...................................................27

**f. Statutory definitions......................................................................28**

KSA 21-5111....................................................................................28

KSA 21-5402....................................................................................28

State v Littlejohn, 298 Kan 632(2014)........................................................28

King, supra <State v King, 297 Kan 955 (2013)>..............................................28

**4. The number of felonies solicited is the unit of prosecution. The intent to have a felony done is the relationship—the single objective. Johnson's third charge acquitted him of having the ongoing intent to have the single felony committed......28**

State v Thompson, 287 Kan 238 (2009).........................................................28

Sprung, supra <State v Sprung, 294 Kan 300 (2012)>.........................................28

KSA 22-2501.....................................................................................28

State v Daniel, 291 Kan 490 (2010)............................................................28

Arizona v Gant, 556 US 332 (2009).............................................................28

D. A solicitation is an attempted conspiracy; thus, charges and punishment must be less than for a completed conspiracy..................................................................29

*"Every solicitation is an attempted conspiracy, and...would be expected to carry a lesser maximum penalty than a 'completed' conspiracy."*.....................................29

People v Rehkopf, 422 Mich. 198 (1985).................................................................29

US v Anzalone, 43 MJ 332 (ACtUS,1995)...............................................................29

Schwenk v State, 733 SW.2d 142 (ACtTX,1987)....................................................29

People v Brenton, 237 ILL.App.3d 355 (1992)........................................................29

Wood v Milyard, 721 F.3d 1190 (10Cir,2013)..........................................................29

E. The conspiracy multiplicity test is appropriate for solicitation...............................30

People v Morocco, 191 Cal.App.3d 1449 (1987).....................................................30

Blumenthal v US, 332 US 539 (1947)......................................................................30

US v Beachner, 555 F.Supp. 1273 (USDCtKS,1983).............................................30

US v Roberts, 14 F.3d 502 (10Cir,1993).................................................................30

US v Petersen, 611 F.2d 1313 (10Cir,1979)...........................................................30

Pham v State, 281 Kan 1227 (2006).......................................................................30

US v Eppolito, 543 F.3d 25 (2Cir,2008)...................................................................30

Toussie v US ,397 US 112 (1970)...........................................................................30

F. Solicitation cases support that the authorized u.o.p. is per objective.....................30

State v Sommerfeld, No.80,404, unpub. (ACtKS,Nov24,1999)................................30

Melina v People, 161 p.3d 635 (SCtCO,2007), Appendix # 10...............................30

State v Mead, 27 P.3d 1115 (SCtUT,2001).............................................................31

G. Grouping, per 18 USCA 3D1.2, is appropriate for solicitation................................31

US v Wilson, 920 F.2d 1290 (6Cir,1990).................................................................31

US v Wynn, 987 F.2d 354 (6Cir,1993).....................................................................31

US v Kuchinski, 469 F.3d 853 (9Cir,1996)..............................................................31

H. Leniency for defendant...........................................................................................31

Sprung, supra <State v Sprung, 294 Kan 300 (2012)> .........................................31

Schoonover, supra. Appendix # 11 <State v Schoonover, 281 Kan 453 (2006)> ...............31

Bell v US, 349 US 81 (1955)....................................................................................32

Famway, supra <City of Lincoln v Farmway Co-Op,Inc.,298 Kan 540 (2013)>.......32

State v Coman, 294 Kan 84 (2012).........................................................................32

I. The way the State presented evidence supports a unitary c.o.c.; the malicious way they created such charges caused this issue. ..........................................................32

J. Prosecution in the matter exceeded the allowable unit of prosecution....................32

Littlejohn, supra.......................................................................................................32

ISSUE 3. The state presented insufficient evidence A) that Johnson solicited RN or LS to commit first-degree murder, B) that the victim was killed as the jury was required to find.. 32

State v Charles, 298 Kan 993 (2014).......................................................................33

State v Farmer, 285 Kan 541 (2008)........................................................................33

A. Insufficient evidence of solicitation.........................................................................33

1. Stacked inferences.................................................................................................33

State v McBroom, No.106,696 (Kan.Jun6,2014).....................................................33

US v Dunmire, 403 F.3d 722 (10Cir,2005)..............................................................33

State v Cruz, 15 Kan.App.2d 476 (1991).................................................................33

State v Williams, 229 Kan 676 (1981)......................................................................33

**2. The imminence requirement** ......................................................33
    Brandenburg, US <Brandenburg v Ohio, 395 US 444 (1969)>.............................33
    Hess v Indiana, 414 US 105 (1973)..............................................................33
**3. Discussion only is not illegal—even if it is about an illegal act**................33
    State v Gains, 431 So.2d 736 (DACtFL,1983)..............................................34
    Enoch v State, 95 So.3d 344 (ACtFL,2012)..................................................34
    Jones v State, 908 So.2d 615 (ACtFL,2005)................................................34
**4. Solicitee. There is insufficient evidence that Johnson was the solicitor**................34
    People v Salazar, 140 Mich.App 137 (1985)................................................34
    State v Anderson, 618 NW. 2d 369 (SCtI0,2000) Appendix # 12.................34
    State v Swann, 142 Ohio App.3d 88 (ACt,2001)........................................34
**5. Inuendo**......................................................................................34
    Pettway v Pepsie, 337 So.2d 757 (SCtAL,1976)..........................................35
    In re...Mainero, 990 F.Supp.1208 (USDCtCA,1997)....................................35
    US v Mullen, 451 F.Supp.2d 509 (USDCtNY,Feb24,2006).........................35
    Taylor v Gasor, 607 P.2d 293 (SCtUT,1980).............................................35
**6. Impressions**................................................................................35
    American Heritage Dictionary, 4ed (AHD)...................................................35
    State v Doyle, 201 Kan 469 (1968)...........................................................35
    Dunmire, supra  <US v Dunmire, 403 F.3d 722 (10Cir,2005)>......................35
    State v Harris, 297 Kan 1076 (2013)........................................................35
**7. Intent.**.......................................................................................35
    State v DePriest, 258 Kan 596 (1995)......................................................35
    State v Brown, 291 Kan 646 (2011).........................................................35
    US v Butler, 494 F.2d 1246 (10Cir,1974).................................................36
**8. In addition to the Statement of Facts ... consider:**................................36
    AHD <American Heritage Dictionary, 4ed>...................................................36
    US v Lovett, 59 MJ 230 (USACtArmFor,2004)...........................................36
    Cheek v Edwardsville, 514 F.Supp.2d 1236 (USDCtKS,2007)....................37
    Humphrey v Williams, 295 GA 536 (2014).................................................37
    State v Hewlett, No.78,079, unpub (ACtKS,Mar19,1999)............................37
    US v Walker, 720 F.2d 1527 (11Cir,1983)................................................37
    People v Neal, 954 NE 2d 358 (ACtIL,2011)..............................................37
**B. Insufficient evidence that Johnson killed he ex-wife**...............................37
**ISSUE 4. The State impermissibly misstated controlling law within the jury instructions describing the renunciation defense. The changed words have different meaning which created new law, violated Johnson's right to due process, and failed to instruct the jury of Johnson's defense.** ...................................................................38
    State v Wade, 284 Kan 527 (2007)..........................................................38
    Gomez, supra <State v Gomez, 290 Kan 858 (2010)>.................................38
    State v Gunby, 282 Kan 39 (2006).........................................................38
    State v Hankins, 774 P.2d 354, unpub. (SCtKS,May26,1989)....................38
    State v Irons, 250 Kan 302 (1992)..........................................................38
    State v Hundley, 236 Kan 461 (1985)......................................................38
    State v Waters, 189 SW 624 (ACtM0,1916)..............................................38
    Webster's New World College Dic.4ed (WCD)............................................39

American Heritage Dictionary (AHD)...................................................................39

State v Hodges, 241 Kan 183 (1987)..............................................................40

State Bd of Nursing v Ruebke, 259 Kan 599 (1996)....................................40

State v Shirley, 277 Kan 659 (2004)..............................................................40

State v Jackson, 239 Kan 463 (1986)............................................................40

Sexton, supra, <State v Sexton, 232 Kan 539 (1983)>.............................40

**ISSUE 5. Insufficient evidence to disprove Johnson's defense of renunciation**...............41

State v Charles, 298 Kan 993 (2014)..............................................................41

State v Farmer, 285 Kan 541 (2008)..............................................................41

KSA 21-5108 (c)...................................................................................................41

Hundley, supra, <State v Hundley, 236 Kan 461 (1985)>...........................41

Gunby, Supra <State v Gunby, 282 Kan 39 (2006)> ..................................41

WCD & AHD.........................................................................................................42

**ISSUE 6. The district court erred in instructing the jury regarding venue jurisdiction depriving Johnson of his right to require all elements be proved beyond reasonable doubt.** ...........................................................................................................43

State v Grissom, CITE.......................................................................................43

KSA 22-2603........................................................................................................43

In re Winship, 397 US 358 (1970)...................................................................43

State v Brammer, 301 Kan 333 (2015)...........................................................43

State v Plummer, 295 Kan 156 (2012)............................................................43

KSA 21-5106.........................................................................................................44

State v McElroy, 281 Kan 256 (2006)..............................................................44

State v Hunt, 285 Kan 855 (2008)..................................................................44

State v Dias, 263 Kan 331 (1997)....................................................................44

State v Moffit, 38 Kan.App.2d 414 (2007).......................................................45

State v DePriest, 258 Kan 596 (1995).............................................................45

State v Race, 293 Kan 69 (2011)......................................................................45

State v Ward, 292 Kan 541 (2011)..................................................................46

Chapman v California, 386 US 18 (1967)......................................................46

**ISSUE 7. The Olathe Police illegally obtained evidence through an investigation and transaction that occurred in KCMO. Therefore, A) OPD illegally exercised their powers outside of their jurisdiction, pursuant to KSA 22-2401, and B) they did so in MO where the conduct Johnson was charged with is not illegal.** ...............47

State v Vrable, 49 Kan.App.2d 61 (2013)........................................................47

State v Sodders, 255 Kan 79 (1994)................................................................47

Sexton, supra, <State v Sexton, 232 Kan 539 (1983)>..............................48

Jackson, supra, <State v Jackson, 239 Kan 463 (1986)>..........................48

Atchison v Stonewall, 275 Kan 698 (2003)...................................................48

Hayner v State, 83 Ohio St. 178 (1910).........................................................48

**ISSUE 8. KSA 21-5303 has 3 alternative means of committing the crime. The State charged 2 but did not show evidence of both as required, and did not provide instruction.**...............49

State v Castleberry, 301 Kan 170 (2014)........................................................49

State v Brown, 295 Kan 181 (2012)................................................................49

State v Schreiner, 46 Kan. App.2d 778 (2011)................................................49

**ISSUE 9. Charges against Johnson are defective: charged crimes are not part of a statute**................................................................................................................49

    Gomez,supra <State v Gomez, 290 Kan 858 (2010)>......................................................49

    Johnson's Multiplicity **Issue 2**.......................................................................50

    US v Ketchum, 201 F.3d 928 (7Cir,2000)...............................................................50

    Detention of J.R., 80 Wn.App.947 (1996)...............................................................50

    Verizon v Hopewell, 26 NJ Tax 400 (2012)..............................................................50

    State v Shirley, 272 Kan 659 (2004)........................................................................50

    Sexton, Supra <State v Sexton, 232 Kan 539 (1983)>....................................................50

    State v Dennis, 303 P.3d 726 No.101,052 Unpub. (ACtKS,July5,2013).......................50

    State v Portillio, 294 Kan 242 (2012)........................................................................50

    KSA 22-4710; 24-6408; 21-6309; 65-7006(a)............................................................50

**CERTIFICATE OF SERVICE**..............................................................................................51

**Appendix**.................................................................................................................52

    # 1    State v Geist, No.74,916,unpub (ActKS,Dec24,1997)

    # 2    US v Delgado-Ovalle, No. 13-20033-07,Lex(USDCtKS,Dec30,2013

    # 3,4  Ashcroft v Free Speech, 535 US 234 (2002)

    # 5    Sanabria v US, 437 US 54 (1978)

    # 6,7  State v Schoonover, 281 Kan 453 (2006)

    # 8,9  State v Adel,136 Wn.2d 629 (SCt,1998)

    # 10   Melina v People, 161 p.3d 635 (SctCO,2007)

Note: on May 25, 2016, the Court granted Johnson permission to file this brief without attaching unpublished cases. Portions of such are in the Appendix to assist the Court, as are portions of other cases. In the brief, "Ap'x" refers to the Appendix number, eg pg 10, Delgado...Ap'x #2..

Unpublished cases are used where there is no precedent published opinion, and where such case has persuasive value and assists the Court. Rule 7.04g.

On May 25th, the Court also granted Johnson permission to file this pro-se brief without sending each party multiple copies and without spiral binding.

**Nature Of The Case.** A jury convicted Rheuben Johnson of 2 counts of solicitation of murder. The court sentenced him, based on a "H" history, to 132 months in prison.

**Statement Of Issues.** 1) KSA 21-5303 is unconstitutionally vague and overbroad. 2) Charges were multiplicious; violates the Double Jeopardy clause. 3) Insufficient evidence of solicitation of first degree murder. 4) Renunciation defense was misstated. 5) Insufficient evidence to disprove renunciation. 6) Jury instruction error regarding venue jurisdiction. 7) Evidence was from out of jurisdiction, M0, where charged conduct is legal. 8) Alternative means: insufficient evidence of both; no instruction given. 9) Johnson was charged and convicted of a crime not defined by statute.

**Statement Of The Facts.** Johnson was charged with 3 counts of solicitation of first degree murder, alleging that he encouraged or requested 3 individuals to kill his ex-wife (no death or harm occurred). A jury convicted him of 2 counts and acquitted him of the 3rd. Court imposed the max consecutive guideline sentence totaling 132 months. (R.1,206-14).

**Relationship with ex-wife.** In the spring of 2012, Johnson was involved in a protracted divorce/child custody case with his ex-wife.(R.15,11-2). He had supervised visitation with his son and regularly attended family/individual counseling sessions.(R.15,29-30). In April, the court implemented a "step up" program that allowed Johnson to progress from supervised visitation to unsupervised.(R.15,32). While Johnson was irritated that the process was slow, he never made threats towards his ex-wife.(R.15,39). His longterm girl-friend, Kathy(KK), testified that in May, he gained increased visitation time.(R.15,106).

**Investigative work.** During his divorce, Johnson hired a pvt investigator to obtain proof of his concerns of his ex-wife's conduct.(R.15,108). The State, to prevent the jury from learning the reasons why Johnson was so concerned, filed a motion of limine which the court granted —Johnson objected.(R.8,3-5). As such, Johnson could not manifest supporting instances of her drug activity and physical /sexual abuse of their son—based upon Olathe police (OPD) reports—being "a bad parent...dangerous activities"(R.18,3-7);child molesting(R.2,29);

1

"weird things," "goth, vampires, addicted to pain pills"(R.9,93,R.15,108-11). KK was aware that Johnson previously hired an investigator to look into his ex-wife but they didn't do much; that Johnson planned to do further investigation; and that about the same time of alleged crime, he was planning to hire an investigator—none of this seemed unusual to her. (R.15,108-11).

**Nodwell (RN)(count 2).** RN testified that in April 2012 he contacted Johnson seeking employment after RN's recent release from prison (25 yrs for 22 theft offenses, 2 escapes, now on parole [R.2,20-1]), after a mutual church friend introduced them.(R.9,107-9). RN owned Nodwell Construction—employees/equipment suitable for cleaning up "a big pile of junk."(R.2,22). A mass of junk—incl inoperable vans/vehicles—on Johnson's property was an eyesore and safety issue that KK talked to Johnson about getting rid of.(R.15, 101-6). RN testified that over lunch at Mr Goodcents(R.2,69) he met Johnson,"a talkative guy," who discussed work, then expressed concern re his ex-wife's lifestyle, drug use, and how that affected his son(R.9,110,114-5), indicated life would be better if his ex-wife would "disappear," and commented "it would be nice if she overdosed on her own pills." (R.9,93,112). RN testified that Johnson wanted "following her to track [her]"(R.9,110); showed him her apt, her coffee stop, and said she worked at S.M.Med.Ctr(R.9,95-6). But at the prelim, RN stated Johnson said she was currently living in a motel due to an apt fire.(R.2,46). Where she worked as a nurse was a good guess: 2 min from the apt. (R.9,97,R.21, St.No.1). But she did not work there; she worked at Research Med.Ctr (45 min away in M0).(R.15,15). The McDonalds coffee stop is between where she did not live and did not work.(R.9,95; St.No.1). When asked what Johnson wanted him to do with this info, RN testified "to follow [her]."(R.2,38-9). In fact, RN testified that just 2 days prior to his 0PD report, Johnson offered gas money to follow her.(R,2,44).

Regardless of what did or didn't happen, RN did not believe Johnson was serious, or wanted him to kill his ex-wife.(R.9,118). In fact, RN still hoped to work for Johnson. RN testified about his next contact:"I called [Johnson] back to ask about employment."(R.9,

100). There was no evidence if this call was made the day RN chose to go to OPD (he was never hired) or earlier, or if this call was in KS. RN pursued this job yet testified: ●Johnson "is nuts" (his reaction to the meeting) ●he hoped Johnson would leave him alone (why he waited 33 days before going to OPD) ●he "didn't want to be around that dude" (why he never went to Johnson's property) ●he didn't want to be a part of all (why he said he never contacted Johnson after the meeting).(R.9,99,117,116,R.2,14). RN called back about the job yet told OPD and the Court (5x) that he never called Johnson back.(R.2,13-15,R.15,70).

**Police report.** On May 18−after a month of follow-up calls to Johnson (R.9,100), still not hired−RN went to OPD and was interviewed by Det.Campbell (MC). RN reported he met Johnson and had a conversation which incl his ex-wife, how she was a problem in his life(R.9,93) and could overdose on her pills(R.15,70). RN did not report that Johnson ever requested that he kill his ex-wife, suggested a means, indicated compensation, or spoke in code when he talked about hauling junk or following.(R.9,112-4,R.15,84-6).

RN reported he had saved messages/calls on his cell phone; only these follow-up calls caused RN to think Johnson was serious; RN testified there were 3-4 calls per day for a month.(R.9,115-8, R.2,16,41). Yet, OPD couldn't retrieve a single call or message and noted that RN reported a total of only 2-3 calls.(R.15,70-1). At trial there was no evidence−eg, easy-to-get phone records−to verify any call or to show venue jurisdiction.(R.2,R.9,R.15).

At the prelim, RN's answers differed dramatically compared to his answers to OPD: he testified that during the initial conversation, Johnson suggested 3 ways his ex-wife could be harmed, that the work was worth $20,000, and that Johnson could pay $5,000 up front. (R.2,9-11). However, RN admitted on the stand that when he spoke to OPD only a month after this conversation, that when asked, he did not tell OPD these 3 ways or that Johnson suggested a huge sum of money.(R.2,29-37). RN stated he thought he told OPD all of this, but OPD's recordings did not contain that info.(R.2,31-33).

OPD knew there was not a completed solicitation with RN; that was to be Det Stites'

job—not just to be available, Stites was to "fulfill the solicitation."(R.9,122). OPD asked RN to contact Johnson and arrange a meeting with Stites.(R.2,102-3).

**Det. Stites (LS)(count 1).** All meetings/calls were audio recorded; transcripts were integrated into audio/video files that played simultaneously to the jury.(R.21,St.No.1-5).

On May 21, LS went undercover to meet Johnson.(R.9,133).At a park in Olathe, RN introduced LS: "Lonnie...has got more time to look into the work" (R.2,20), advised Johnson that he had told his buddy the details of the work (R.21, St.No2,2:45-6:21), and left—now "out of the equation"(R.9,122). Johnson told LS that he had asked RN for an estimate.(R.1.45,R.21,St.No2). LS testified he had no idea if Johnson did tell RN where he lived or specifics, yet confirmed to Johnson that RN did tell him "everything that needed to be done as far as the project"(R.15,135), "a project where he wants some junk hauled off"(R.9,150). Johnson made several statements about having junk/vans hauled off his property (incl: all has been sitting there a long time with raccoons inside, broken glass all over.[R.1,46,R.21,St.No2]),and separately mentioned his ex-wife and custody.(R.9,152).

LS testified that he thought Johnson was talking in code during the entire meeting (R.9, 151) just because of his initial statement (R.9,152) that custody issues and his life were going good so it was "time to get these other projects done," and that such might be referred to as getting "vans hauled off" and house remodeling.(R.9,150). Just this, "indicated [to LS] that that was a code for what he was wanting done."(R.9,152). There was no testimony as to what else Johnson's statements might have meant; however,LS agreed,such words actually meaning what they said was"one way to look at it."(R.9,152). And the next day, it's clear to LS that the initial clean-up project—whatever he assumed that was—was far different than discussing investigative work.(R.9,154). There was never a conversation about code except at the end in M0 where LS said "I'm tired of the code stuff" (R.9,151), yet Johnson continued talking about investigative work or simply agreed with what LS said.(R.2,71).

LS agreed in court that he was intending to get Johnson to make admissions or make it

4

"very, very clear" that Johnson intended to have his ex-wife killed.(R.9,149). Yet, Johnson never asked for or said he wanted LS to kill his ex-wife.(R.9,151,154). In fact, when LS asked Johnson if he wanted the problem terminated, he replied "That's not why we are chatting today, I just want you to get the vans hauled off."(R.9,152). LS made "assumptions and inferences" regarding what Johnson wanted him to do and simply had a "different impression" of Johnson's statements.(R.9,151-2). But contrary to RN's statements, Johnson did not ever indicate that he wanted LS to overdose her on pills, burn her house, shoot her, or even refer to such.(R.9,154). In fact, Johnson never even indicated that he wanted his ex-wife to "disappear."(R.9,151).

The next day, LS called Johnson to set up a second meeting(R.15,73)—prior, no date had been set to re-meet (R.9,124). Johnson says "I'd like to track and see where my wife is." (R.1,50,R.21,St.No3). Now, LS agreed, they were talking about investigating Johnson's ex-wife; only now did Johnson tell LS about her vehicle and where she went (R.9,154), and said: "Yea, Umm, If..hiring you to do detective work, detective work [sic]. Undercover work. Umm. Then that would. Uuh." Rather than let Johnson explain further, LS cut him off: "Well, we're going to have to talk about that further...." Johnson added: "Project is detective work ...Figure out where she goes and stuff like that...Another part of detective work is to make sure nobody, no bystanders or anybody else gets hurt"—again,LS cuts him off:"I'll talk to you in person."(R.1,50-1,R.21,St.No3). LS requested to meet at 4pm; Johnson agreed. (R15,125).

After 4pm, 30 min late (R.9,125), Johnson called and canceled the meeting: he "would not" make it, was "not going" to the park, was currently in Lee's Summit,MO (R.9,156), and insisted that if LS wanted to meet that it be in MO (R.15,75,next call,again insisted). This made all impossible: LS was "tied up for the night."(R.9,156).

About 5pm, LS called Johnson (R.15,75) to suggest a 5:30 meet and asked if he "still wanted" any work done. Johnson did not answer yes, rather became hesitant as he repeatedly said "things like, 'I probably need to think about this some more.'" LS admitted Johnson was "clearly hedging on whether or not he wants [LS] to do any work for him."

LS urged on while firm he "can't go to M0." (R.9,156-7). Thus, Johnson again insisted on M0 (R.15,75, R.9,157) and firmly "would not meet" in KS (R.9,125)—a definite impasse. Then LS urged to meet in JoCo,KS; so Johnson replied he'd "have to go back to thinking about this whole thing"; which caused LS to confirm the end with ("Well, like I said I'm leaving town, so I can't."[R.1,52,R.21,St.No9]), "I won't be around,"and hung up.(R.9,157 -8). In court, LS agreed it was a "done deal at this point" ie, never another meeting.(R.2,77).

But about 5:30, LS called Johnson "clearly initiating contact" again "to set up another meet"; offered to meet in M0; and said he "needed the money."(R.15,75,R.9,159-60). Johnson's girlfriend, KK, testified how he "doesn't want to cause conflict [or] ruffle any feathers" and "gets taken advantage of," "bullied."(R.15,98). Johnson reiterated "things are going pretty good" re his ex-wife and in general.(R.9,160). He repeatedly stated that he wanted to do what was in the best interest of his son, that he did not want his actions to be "misconstrued," and that he was looking for investigation.(R.21,St.No3). In M0, Johnson agreed to meet in M0.

At the meeting in M0, Johnson's immediate statement was "If you are going to do investigative work you will need a picture" and repeatedly referenced "investigative work." Johnson provided a photo of himself with his ex-wife and their son, then gave what LS earlier requested and needed: $3,000 and a map.(R.9,144-6,R.21,St.No5,6). Later, LS asked if the photo was the vehicle he wanted to "disappear" and Johnson clarified "You mean to do the investigative work?" (R.9,160-1). After all, Johnson never indicated to LS that he wanted her (or anyone in the family photo) to disappear.(R.9,151). KK testified that Johnson doesn't pay attention, listen, or hear well.(R.15,98). LS never asked if Johnson wanted anyone killed; Johnson never acknowledged or affirmed such; even at the very end, after LS received the money and photo, LS is"still trying to determine"Johnson's intent.(R.9,163).

LS had a "personal opinion" he knew what Johnson wanted because "Nodwell said this [info]"— this opinion: he was only "fairly certain of" yet "still trying to determine"(R.9, 163); he never stated so jury had to guess(R.2,R.9,R.15); and he previously stated was

6

founded by info that "came through other detectives"(R.9,149). But it didn't come from Johnson. OPD arrested Johnson when he then drove back into Leawood,KS.(R.9,126).

**Preliminary hearing.** The State presented only the testimony of RN and LS. Here, RN said that the reason he could not remember while sitting in a quiet room with Detective MC was because RN runs a business, has "a family and everything else," and "Johnson isn't king of my world."(R.2,31)(RN had been in business for only 3 months: it wasn't picking up yet.[R.2,23]). When questioned about why and what he forgets, RN became argumentative and stated: "It isn't a figment of my imagination. He is sitting over there [in the chair], isn't he?...Well apparently somebody's information is correct because he's over there."(R.2,32). Later, RN explained: "People forget things man. People you know,...they have a lot going on, man...I'm not perfect"; then RN admits "Yes, I go to court every day and just make stuff up on people."(R.2,36).

Johnson argued that the State failed to present evidence to bind him over for soliciting LS because the evidence consisted of only innuendo, assumptions, and speculation but no evidence that Johnson requested or encouraged LS to commit murder.(R.2,84) The court acknowledged the problems with LS's testimony, but found there was "plenty to corroborate" the idea that the conversations with Johnson were about his ex-wife.(R.2,85). Johnson also argued the State failed to present evidence to bind him over on the charge of soliciting RN based on RN's lack of credibility.(R.2,84). Although the court noted that RN "was singularly unimpressive as the State's witness," the court bound Johnson over on the charge of soliciting RN to commit murder because "different witnesses corroborate[d] one another's testimony."(R.2,85).

**Trial.** Johnson provided testimony of his longtime girlfriend regarding the condition of the farm property that Johnson resided at, in rural Jo.County, and photographic evidence* of the property. The testimony and exhibits depicted the property having an area of old vans, burnt-out trucks, cars—all, with broken-out windows and missing body parts—old washers, tangled fencing, rusted scrap metal, and other items of junk which needed to be removed. All this was in an area overgrown with thorn locust trees and a jungle of tall

7

substantial weeds.(R.15,91-113). (*The photos admitted at trial have been lost. See Johnson's motion to stay, Feb 15, 2015 and status update, Jul 11,2015).

RN again stated the 3 ways to harm the ex-wife; yet, RN also knew $20,000 was really for a taxi ride because he knows the truth.(R.9,111-2). However, RN admitted he never provided OPD with info about the ways or the money, and now has a new reason why he forgot and why it is currently hard for him to remember: "It's hard for me to remember a lot of things because my wife has cancer, and I have to remember that too."(R.9,113).

RN and LS testified that Johnson never asked them to kill his ex-wife, but instead discussed construction work and investigative work.(R.9,110-4,151,154-5,160-1).

Two non-pik instructions were provided to the jury, the first re the admission of State's exhibits of the audio recordings with integrated transcripts, the second related to jurisdiction.(R.1,160-192). Johnson objected to the instruction related to jurisdiction but the court overruled the objection, included the instruction.(R.15,129-30). Johnson was convicted of the two counts detailed above, acquitted of the third count, his motion for a new trial denied and the maximum guidelines sentence imposed.(R.1,206). A timely notice of appeal was filed.(R.1,203). This appeal follows. Additional facts as necessary to be discussed below.

## Argument

**ISSUE 1. Vague and Overbroad. The legislature's failure to define conduct which constitutes "commanding, encouraging or requesting" renders the statute impermissibly vague and overbroad, infringing upon Johnson's protected First Amendment Rights; thus, convictions are constitutionally infirm and must be reversed.**

**Preserv./Std of Review.** Johnson did not raise this issue at trial. He requests this Court consider the issue for the first time on appeal pursuant to precedential exceptions to the general bar. St.v Williams,298 Kan 1075(2014). An appellate court may review such an issue where it involves a question of law on proven fact which is determinative of the case or where consideration is required to serve the ends of justice or prevent denial of rights. St.v Gomez,290 Kan 858,862(2010). Such issue is a question of law; resolution would be determinative of the case, particularly where the purported offense conduct is recorded on tape and available for the Court. The Right to free speech and to due process are protected rights

8

which must be considered in the interests of justice. 14th, 1st Amendment. Johnson is not precluded from challenging the constitutionality of his conviction by his notice of appeal. (R.1,203); see eg St.v Coman,294 Kan 84 (2012). Whether a statute is unconstitutional is a question of law: unlimited review. See Smith v Martens,279 Kan 242,245(2005).

**A. KSA 21-5303 is Unconstitutionally Vague.** In order to properly define illegal conduct a statute must detail "sufficiently definite warning of the conduct proscribed when measured by common understanding and practice." Martens. The statute must further determine whether it "adequately guards against arbitrary and discriminatory enforcement." Id. The court must hold criminal statutes to a higher standard than those which proscribe only civil sanctions. Id.

*A statute which forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process...the test for vagueness is a common-sense determination of fundamental fairness. St.v Kirby,222 Kan 1,4(1977).City of Wichita v Hughes,12 Kan App 2d 621,623-4(1988). No man shall be held criminally responsible for conduct which he could not possibly understand to be proscribed. US v Harriss,347 US 612,617(1954).*

The failure to define portions of criminal statutes so that they provide an objective standard of behavior has been fatal to prior statutes. In KSA 21-3438 (1994), the KS Supreme Court found that the terms "alarms, annoys or harasses the person" were not sufficiently defined so as to effectuate objective standards of behavior as the defendant would be subject to the idiosyncrasies of each individual alleged victim without regard to any reasonable person standard related to the impact of the victim. St.v Bryan,259 Kan 143(1996).

Similarly in the solicitation statute, failure to define the terms "commanding, encouraging or requesting" render the actions of a defendant subject to the interpretations of others without an objective standard. Under KSA 21- 5303, Jonathan Swift's A Modest Proposal (1729)(advocating cannibalism of babies as a means of population control) would be hundreds of counts of solicitation of murder. As Mr Swift was a satirist, it is clear that he did not specifically intend to instigate cannibalistic genocide; however, absence of any defining terms for "encouraging"would leave him liable for prosecution under KSA 21- 5303.

In absence of defining terms for commanding, encouraging or requesting, the content

9

of a defendant's statements becomes divorced from his tone and meaning rendering whether a solicitation has occurred to the discretion of the listener. As the defendant is under no obligation to testify or rebut the allegations of the State, the evidence of wrong-doing is purely attributable to the subjective interpretation of the listener. See eg Fifth Amend. This is precisely the type of subjective criminalization which rendered the stalking provisions of KSA 21-3428(1994) unconstitutionally vague as reliant upon an individual's comprehension of the situation. In Johnson's case, LS was trying to get evidence based upon the report of RN and the effort to set up an undercover investigation. As such, when Johnson began discussing removal of vans while complaining about his ex-wife, LS jumped to conclusions that "vehicles" was a euphemism for murder instead of accepting Johnson's statements as merely a man complaining about his ex-wife and property clean-up. A conversation which undoubtedly happens in KS innocently on a daily basis.

Because the solicitation statute relies upon the listener's subjective understanding of a defendant's statements, the statute fails to sufficiently describe proscribed illegal conduct such that a defendant is on notice. Particularly when considered under the strict paradigm necessary for criminal statutes. As such, KSA 21-5303 is unconstitutionally vague.

**Consider next: 1) KSA 21-5303 fails the 1st prong of the vagueness test, 2) also the 2nd, and 3) allows conviction if nothing was communicated. 4) Here, there was no obvious violation.**

*A law is invalid if it violates either prong...* City of Lincoln v Farmway,298 Kan 540,545;547(2013).

**1. KSA 21-5303 fails the 1st prong—must give fair notice—due to, in part, the criminalization of "encouraging" which: a) cannot be defined legally, b) is defined with equally vague words, c) is not clear because it's in a dictionary, d) should be defined. Statute has: e) no clear line to separate the unlawful, f) no objective standards exist. g) People must guess.**

Similarly, "endangering" was vague in St.v Kirby: 1) not defined by statute, 2) not defined in criminal code, 3) no accepted definition, 4) no clear line, 5) no standards, 6) requires speculation, 7) all, yet word is in Webster's. 222 Kan 1,9-10(1977).

**a. "Encourage" is not and cannot be defined legally.**

*There appear to be no Kansas cases expressly defining "encouragement."* Kan.App.Ct in St. v Geist,No.74,916,unpub.at*9,10 (Dec24,1997). Appendix No.(Ap'x#) 1

*Congress has not defined "encourages"...its meaning is ambiguous.* US.Dist.Ct.KS in US v Delgado-Ovalle,No.13-20033-07,Lex*13(Dec30,2013,after Johnson's chrg) Ap'x#2

10

"Encouraging" in KS is just as vague as it is in NE where St.v McCune said,

"'Encouraging' or 'contributing' in Nebraska are just as vague and subjective as 'annoying' in Ohio." 189 Neb 165,172(1972). In Reproductive v Webster, "encouraging or counseling" was vague: no fair notice. 662 F.Supp 407,426(USDCtM0,1987). Court:

> "Encouraging or counseling" elicits vastly different interpretations of the forbidden activity. The Supreme Court disapproved of similar terms such as "counsel" "advocate" and "advise"... threatened...free speech...Id: Cramp v Bd of Public Inst....368 US 278,286(1961)(re similar terms, Cramp said:"These general words and phrases are so vague and indefinite..."Id,298).

See also: BB&T v Rutherfoord,80 VA.Cir 174,179-80(2010)("encourage"not defined, ambiguous, overbroad); Amalgamated v Donovan,767 F.2d 939,946;947(USACt,1985)

("The senate dropped the 'encouragement' language":"too vague"); Yarborough v Warren,383 F.Supp. 676,687(USDCtMI,1974)("relies on the unformable 'encouragement'": a vague term); NOW v Oper.Rescue,37 F.3d 646,657(USACt,1994)("encouraging" "was vague enough to create an impermissible potential for overinclusivenesss").

**b. Words that define "encourage" are equally vague.** Encourage is defined as:
> to instigate; to incite to action; to give courage to; to inspirit; to embolden; to raise confidence; to make confident; to help; to forward; to advise. Black's Law Dic. (6ed,1990) Geist, supra,*9.

Such definition is inappropriate. Delgado,supra,USDCtKS: "Help" is overbroad. Court considered (at*18-20) Lopez (whose dissent stated: "The most general and least meaningful possible interpretation [of encouraging is] 'to help'" which "is vague") and rejected "equating of encourage with help."Id,*22. See PerfectVision v PPC,No. 4:12CV00623, Lex.at*65 (USDCtAR,Aug29,2014)("to help" is subjective; "cannot discern"; indefinite).

Advise, courage, confidence are also subjective. Eg: Cramp,supra("general words [incl advice] are vague"); US v Andrews,790 F.2d 803,812(10Cir,1986)("mere subjective lack of confidence"); US v Breque,964 F.2d 381,389(5Cir,1992)("subjective confidence"); Paroli v Bolton,57 Misc.2d 952,956(SCtNY,1968)("subjective qualifications" incl "personal courage"); St...v St. Troopers,179 NJ Super. 80,90(SCtNJ,1981)("subjective factors...courage").

**c. "Encourage" is not clear just because it is commonly used or it is in a dictionary.**
See eg St.v Adams,254 Kan 436(1994):"'Misconduct,'..." are not "commonly understood"

just because they are in a dictionary. "Many words are defined in a std dictionary which are not 'commonly understood.'" They "are not adjectives which modify, limit, or qualify"; rather,"constitutes conduct which is prohibited." "Nor are they terms which have been considered and defined by numerous...decisions." "Unlimiting terms" requires others to guess. Id,445. It is a "general term" because "statute does not specifically enumerate the types of misconduct prohibited."Id,441. Such "is in the eye of the beholder": vague. Id,444. See also People v Mc-Caughan: harsh and unkind do not provide a standard of conduct or quilt; both were in Penal Code since 1872 and in Webster's, yet void for vagueness. 49 Cal.2d 409,416;415(SCtCA,1957). Similarly here, "encouraging" is the illegal act, not just an adjective. No request was made by Johnson; thus, convictions rely on unformable "encourage." "Encourage" has a wide range of definitions between dictionaries, versions, and case law disagreements, thus vague. See St.v Lackey,232 Kan 478,480-1 (1993)(various definitions and vague words made statute vague).

**d. Even if "encouraging" could be defined legally, it is so misunderstood that it must be defined within the statute with non-vague terms.** Eg: Farmway,supra,298 Kan,551-2 (Court noted Hofstetter ["nuisance is perhaps incapable of precise definition," yet ultimately defined it], and stated "definition must be stated in light of this understanding"); Entmt v Foti,451 F.Supp.2d 823,836(USDCtLA,2006)("no explanation of crucial terms...;'violence'").

**e. KSA 21-5303 does not provide a line between the illegal vs: discussion, an assumed solicit or encourage, a statement of what "could be done," or other free speech. A separating line must be clear within the statute; prohibited acts must be specific.**

See eg: St.v Meinert,225 Kan 816,819-20(1979)(no line between corporal punishment and illegal abuse;"vague...uncertain";depends "upon the personal beliefs of the individual"); St.v Carpenter,231 Kan 235,239(1982)(Pigge [operators "have a right to know what acts are prohibited"]); [Firth "vague...indefinite...[no] sufficient standard]); Ruff v City..Leavenworth,858 F.Supp. 1546,1558-9(USDCtKS,1994)("not specific enough to afford fair notice"; must guess/speculate); Altamont v Finkle,224 Kan 221,224(1978)(exhibition of acceleration: "vague and indefinite," no definition, no way to "delineate the proscribed conduct," must guess, "subjective determination," no objective standards); St.v Sharp,340 P.3d 1235, No.110,845, unpub-

.at*10-11(ACtKS,Dec19,2014)(statute had specific acts, eg squeal—in contra Finkle,supra).

Johnson's discussions, in KS, did not set up or request anything (any topic), but rather allegedly had one vague, typical, wishful comment at most. KSA 21-5303 has no line to separate vague statements from clear intention, as in Wood v Utah Farm,2001 UT App 35 at P21(2001)("not definite enough" statements were no more than "'vague encourage-ment' and 'hyperbolic optimism,' which is insufficient to convey a clear and unequivocal intention"[quoting Robertson re "Get your problem taken care of..."]).

**f. There must be an objective standard when a law is based on how one individual perceives an act. KSA 21-5303 has none.**   See eg: Howard v St.,272 GA 242,248 (SCt,2000) (solicitation statute vague: "fails to provide explicit standards" per Grayned, US); Pl. Par-enthood v Phil Kline,287 Kan 372,428(2008)("no objective test—statutory or otherwise"). In contra, Farmway,supra,at 547 noted Smith and said statute was not vague: "objective stan-dards are used." Those were: must be "knowing and intentional...no legit purpose"; "cause a reasonable person to suffer"; "constitutionally protected activity is not included"; "rea-sonable fear"; "seriously alarms"; "substantial emotional distress." Smith,279 Kan,250.

**g. The common person cannot understand what conduct KSA 21-5303 prohibits, esp when such is left to the sensibilities of another individual.**

The important question in considering vagueness is not if courts can determine what "encouraging" is and its limits, but rather if a "person of common intelligence" can. Such must be possible by reading the statute—not by exhausting research. Courts have already shown that even though some attempted to define "encourage," such is difficult.

**2. KSA 21-5303 fails the 2ⁿᵈ prong—must be precise to protect against arbitrary and discriminatory enforcement. Statute: a) is subjective, b) lacks objective modifiers, c) lacks objective standards for "encouraging"— a mental impression.**

*Without objective standards, all it takes to be guilty is for another to point and accuse: "He encouraged me!" — sort of like the witchcraft trials of the 1700's.*

A law is vague when cases are resolved "on an ad hoc and subjective basis" (Grayned v City of Rockford,408 US 104,108-9[1972]), "when...dependent upon the individualized sensitivities of each complainant" (Thelen v St.,272 GA 81,83[2000]). This permits a

"standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." Kolender v Lawson,461 US 352,358(1983).

**a. KSA 21-5303 is determined by the listener's subjective perception, thus vague.**

See eg Farmway,supra,298 Kan. Two cases were contrasted(Id,547-8). Luna failed both prongs: "[annoying,...] was entirely subjective...no objective standards for determining [amt] prohibited or judging a complainant's sensitivity." Wichita was not vague: "the reasonable sensibilities standard" is objective to measure all potential violations; "provides sufficient notice...prevents arbitrary enforcement." Thus in Farmway, prohibiting loud noises which "annoys,..." fails the second prong: no clarity, no obj standards. Id,549. Re Luna, the Lawrence v Gilmore court agreed: "The determination of an annoyance inherently bears on the perception and feeling of the person observing the speech."304 P.3d 363, No.108,527,unpub.at*15(ACt KS,Aug2,2013). "Encouraging" is determined the same way.

In Bryan the stalking statute was vague: no "definition or an objective standard to measure the prohibited conduct." Supra,at151. Even with the objective std of the defendant's mental state—"intentional and malicious following"—the act only became criminal based upon the subjective std of the individual being followed. Id,154. Terms "subject the defendant to the particular sensibilities of the individual victim." What "annoys...one person may not annoy...another." Id,154-5. KSA 21-5427 later added a "reasonable person" standard.

**b. KSA 21-5303 lacks objective modifiers—intent or other.** In Johnson's case, an encouragement is, at most, what RN and LS felt—neither testified that such came from Johnson; in fact, LS said his opinion was founded on info from RN (R.9,163). The statute—by not requiring that acts be real (actual), substantial (not seeming or imaginary), and intended—allows a law enforcer to slightly think that what anyone says is an illegal request or encouragement, while being uncertain,while real innocent explanations exist. See St...Smith v Fairmont,196 Kan 73, 80(1966)("real and substantial, add certainty and objectivity to the word value"). But, "An act which is vague does not become certain because it is done willfully and maliciously."Adams,

supra,444. Eg, "The requirement that defendant must have acted with an intent to be harsh or unkind...does not make clear what those words mean":vague. McCaughan,supra,at 416:(8).

**c. "Encouraging" is a mental impression that requires definition as to how much, how long, or what it must be—an objective standard.** The statute, a plain reading of and practical use of, requires an inquiry into the mental state of the person solicited. This is particularly true when, as in this case, the alleged solicitation is not a direct, overt request, but instead is allegedly made through assumptions that are wholly or partially dependent upon the solicited person's interpretations. The statute provides no guidance to determine if such is what the person solicited believed or whether it is what a reasonable person would believe in the same circumstance. Therefore, a jury must rely on the listener's subjective understanding and receives no "reasonable person" guidance. See Independence v Richards re "sensory impression": must define the effect. 666 SW.2d 1,9 (ACtM0,1983). "Not sightly" and "ugly" are in Webster's, yet are "subjective and qualitative and convey no common understanding or practice." Law can regulate "according to harbored notions...operates arbitrarily and without reasonable prediction. It posits a fickle standard of regulation"; "conveys no determinable criterion...invites the vagary of personal response." Id,8;11.

**3. In section (b) of KSA 21-5303, one can be guilty without having communicated anything.**

Throughout KSA, eg 21-5221, "actor" is the defendant, "person" is the receiver(s).

*KSA 21-5303...(c)...defense that the actor, after soliciting another person to commit a felony, persuaded that person not to do so...a...renunciation of the actor's criminal purposes.*

Section (a) defines solicitation; however, section (b) is the issue:

*(b) It is immaterial under section (a) that the actor fails to communicate with the person solicited to commit a felony...*

Therefore, if the defendant doesn't communicate with the receiver—in any manner, presumably about the felony—then he could have solicited. Section (b) continues:

*[It is immaterial]...if the person's conduct was designed to affect a communication.*

So, if the receiver purposely did conduct which was supposed to mean something, the defendant's non-communication is irrelevant. Confusing. How could one know if the receiver had conduct which meant something? This might incorrectly lead others to

15

conclude that the <u>actor's conduct</u> (defendant's) was relevant. Ambiguous and vague.

**4. There was no clear violation of the statute in Johnson's case—impressions only.**

Only the prosecutor stated, and repeatedly, that Johnson wanted someone to kill his ex-wife or acknowledged such. Stmt of Facts show that Johnson never asked or wanted RN or LS to kill her or acknowledged such. Both felt the discussions could have meant something different, yet never stated what that might be. There were real innocent explanations that both chose to disregard. RN—a lifelong criminal—admitted he thought initial talk was "a joke."(R. 9,94). His impression—not an "assumption or logical inference"—of how "following her" and /or construction work meant different went unexplained; yet, he wouldn't be surprised if the construction work did exist.(R.9,116). LS—acting on the predetermined understanding that Johnson wanted him to commit a felony—simply "had a different impression" of the discussion; yet, the innocent explanation "was one way to look at it," LS agreed.(R.9,152).(Impression: a <u>vague notion</u>, a feeling. <u>Amer. Heritage Dic.</u>,4ed). At the very end of the M0 meeting, LS "is still trying to determine" Johnson's intentions (R.9,163)—an incomplete impression.

**5. Several states have combated the problem associated with the KS solicitation statute** by requiring additional corroborating evidence where witness testimony is the only evidence of the crime. See Colo.Rev.Stat.18-2-301(1)(requires proof of acts committed "under circumstances strongly corroborative of that intent [to solicit]";Tex.Stat.Ann 15.03(b) (conviction not allowed on "uncorroborated testimony of the person allegedly solicited unless solicitation is made under circumstances strongly corroborative" of the means rea and actus rea of defendant). This corroboration requirement necessarily remedies the problem in the current statute that allows convictions based only upon the subjective interpretations of the person allegedly solicited. KSA 21-5303 statute has no such requirement.

The State did not provide evidence of Johnson's objective intent, but rather relied on the interpretations of its witnesses' subjective interpretations in order to sustain these convictions. Because the plain language of the statute necessarily relies on the subjective interpretations of statements by individuals, Johnson was not on notice that he could be

prosecuted and convicted based solely on Nodwell's and Stites' <u>interpretations and</u>

<u>impressions</u> of the conversations. KS and other courts have repeatedly found that

"encouraging" is vague. As such, this statute fails to put individuals on notice of the

conduct it prohibits and is unconstitutionally vague.

**B. KSA 21-5303 is Unconstitutionally Overbroad--facially, applied to Johnson, substantial-- in that it infringes upon his First Amendment rights to free speech and 1) does not contain required imminence, 2) is too restrictive, and 3) prohibits speech which tends to encourage.**

Vagueness and over broadness are distinct constitutional challenges. <u>Hughes</u>,supra.

**1. Encouraged acts are not always imminent as required.** The 10th Circuit Court stated:

*"Encouraging" <u>and</u> "promoting,"...do not necessarily imply incitement to immediate action... [such a law] is unconstitutionally overbroad..* <u>Nat'l Gay v Bd Education</u>,729 F.2d 1270,1274 (1984).

...and such speech is protected per <u>Brandenburg</u>,US; one cannot be punished for speech

about conduct which might happen "at some indefinite future time" per <u>Hess</u>,US; eg, a

teacher urging the repeal of such law before legislature or on TV would be encouraging

such illegal activity. <u>Id</u>. Therefore, KSA 21-5303 is clearly overbroad.

In considering the interplay between overbroadness & First Amend, KS SupCt found:

*"The First Amendment guarantee of freedom of speech forbids the States to punish use of language and words except in certain 'narrowly limited classes of speech'...'Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity'...Limited categories of speech which are not protected by the First Amend. include: fighting words...obscenity...libel...and incitement...."* <u>St.v Huffman</u>,228 Kan 186(1988).

**2. By criminalizing "encouraging," KSA 21-5303 is more restrictive than needed. With no limitations, a multitude of protected possibilities, including free speech, are prohibited.**

**a. KSA 21-5303 did not need to prohibit "encouraging."** When created after 1983, the

1984 decision of the 10thCirCt (<u>Nat'l Gay</u>,above) could have been considered. (1983:

<u>Sexton</u>,232 Kan 539-no solicitation yet.) In KSA 21-5111(cc), solicitation is:"to com-

mand, authorize, <u>urge</u>, incite, request, or advise another." Here, "encouraging" is not

needed to prevent solicitation. Thus, KSA 21-5303 is not the "least restrictive means

among available, effective alternatives" as required by <u>Ashcroft v ACLU</u>,542 US 656,

666(2004). And, criminal speech must include "urging." <u>Yates v US</u>,354 US 298(1957).

It appears no State has ever prosecuted a felony solicit based upon only an encourag-

ing—or a vague impression of one—which further shows that KSA 21-5303 is effective

without "encouraging." But even without, it is still overbroad and vague.

**b. Limiting standards could have been used in KSA 21-5303.** See eg, <u>US v Stevens</u>,559 US 460,482;487(2010)(limiting standards included exempt if "scientific,...")..

**c. Overbreadth is often based upon very few scenarios.** Eg: <u>St. v Final Exit</u>,No.A13-0563, unpub.at*14,17(ACtMN,Sep30,2013)("encouraging" is free speech: could incl literature or political endorsement); <u>Dissmeyer v St.</u>,292 Kan 37,41-3(2011)(phone, kid's games,...could be used for betting); <u>St.v Conley</u>,216 Kan 66,69-70(1975)(touching or fondling could cover handshakes to intercourse); <u>Finkle</u>,supra,at 224(every stop and go could be an"exhibition of speed or acceleration"); <u>Carpenter</u>,supra,at 239(mere operation of a vehicle endangers others); <u>St.v McAffry</u>,263 Kan 521(1997)(prohibits protecting cattle); <u>Junction City v Mevis</u>,226 Kan 526 (1979) (prohibits carry gun from store to home...).Overbroad laws are often ruled "void for vagueness."

**d. A statute that punishes privileged conduct is overbroad regardless if defendant engaged in such.** <u>NAACP v Button</u>,371 US 415,432 (1963). Or if such is protected only "under some circumstances." <u>Dissmeyer</u>,supra,at 43. Vagueness and overbreadth can be applied to the rights of third parties. <u>Wichita v Wallace</u>,246 Kan 253,267(1990).

**e. What could encourage a felony is limited only by what an over-zealous, anxious-to-convict law enforcer or eager-to-sue civilian decides to concoct or pursue.**

Eg: a cornucopia of literature (Jack The Ripper, War And Peace, Edgar Allen Poe, Odyssy); some true crime/children's books, movies, video games, rap songs, news broadcasts (copycat crimes thrive on publicity). Discussion of thoughts, advocacy, optimism, vague encouragements with no certainty, joking, speaking up against or to change laws. Some of what courts and jails provide (cases on Lexis give how-to info, eg, where to find bomb-making books, an eight-man cell is a college-like course on how to cook meth, rip-off stores, smuggle drugs, find accomplices)—not a wise career; yet, it's often-irresistible encouragement. Unintentional acts (public said: mom who took her son to the shooting range thereby encouraged the later massacre); selling greenhouse supplies (growing marijuana); bar drinks (dui's, vehicular manslaughter). All, of course, subjective.

**3. KSA 21-5303 criminalizes speech—eg discussion—which merely "tends to encourage" the unlawful end result.**

> *The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.* Ashcroft v Free Speech,535 US 234,253(2002)(re right to think) Ap'x#3

Cannot punish speech based on "a prediction or suspicion" that it will tend to "encourage undesired behavior."Entm't v Foti,supra,831. Rather, there must be incitement; "Mere counseling or encouragement would not suffice."86 Marq. Law.Rev.501(2002),512 (per Brandenburg).

**Discussion is always protected speech.** See St. v Gains,431 So.2d 736(DACtFL,1983) (discussion only of murder and reserving to decide later whether the hit would occur "reached the threshold of the crime but never crossed it"). "Protected speech does not become unprotected merely because it resembles the latter."Free Speech,supra,255. Ap'x#4 In present case, regardless of the topic, there was only discussion of work which "could" be done. The most RN and LS alleged was they had an impression that discussion of legit work meant something else (although neither provided alt meaning). Johnson never used "fighting words" to describe violence against his wife in the traditional sense of the term. He never explicitly advocated for her shooting, kidnapping or any other violent action towards her such that "lawless" action would be imminent. Complaining about one's ex-wife is self-expression which is constitutionally protected speech. See generally First Amend,US Constitution. In absence of specific language which would render lawless action likely, the restriction of the defendant's First Amend. rights to complain about his wife render the statute overbroad. Even assuming the defendant's statements about "disappearing" were likely to result in violence, they cannot be determined that they would render imminent violent action. Again, there are millions of men who wish their ex-wives would "disappear" and under this paradigm, that wish expressed would be considered offering a contract for murder, as would any man who wished his ex-wife was run over by a truck (aggravated battery), abducted by pirates (kidnapping), or any other such common complaint which hopefully attributes the commission of a felony against a former spouse. Or to be fair, any wife who wished her husband's TV blew up (arson), golf clubs disappeared (felony theft), etc. would also be subject to prosecution. As such, the

statute is overbroad as it infringes upon constitutionally protected free speech.

**Conclusion.** As KSA 21-5303 is unconstitutionally overbroad and vague, it cannot form the basis for Johnson's conviction and infringement of liberty without violating his First and Fourteenth Amendment Rights to Free Speech and Due Process. Therefore, Johnson's convictions must be reversed and vacated.

## ISSUE 2. Johnson's charges were multiplicious; convictions violate Double Jeopardy Clause. They exceed the allowable unit of prosecution—an ongoing course of conduct.

Johnson was convicted of two counts of solicitation, and acquitted of a third, related to the State's evidence of his ongoing attempt to hire out the killing of his ex-wife. The two counts of solicitation violate Johnson's constitutional rights against Double Jeopardy as they impose multiple consecutive punishments for a single course of conduct (c.o.c.) which is subject to only one allowable unit of prosecution (u.o.p.). The three charges violate multiplicity. As such, his two convictions must be reversed and vacated.

**Preserv./Std of Review.** In a pretrial motion, Johnson raised the multiplicity issue.(R.1,53 -4). Motion was denied. Even if an objection was not made, a constitutional issue may be considered for the first time on appeal where it involves a question of law arising from admitted facts which is finally determinative of the case or where it involves a denial of fundamental right or consideration of the issue is necessary to serve the ends of justice. St.v Gomez,290 Kan 858(2010). Multiplicity arguments have been considered when raised for the first time on appeal under these exceptions. See St.v Nguyen,285 Kan 418(2007); St.v Simmons,282 Kan 728(2006). Therefore, this Court may consider this issue on the merits as it involves a fundamental constitutional right which must be addressed to serve the ends of justice. Failure to consider this issue on the merits will subject Johnson to separate, consecutive terms of punishment for a unitary c.o.c. contrary to his constitutional rights. Both the State and Federal Constitutions prohibit multiple punishments for the same offense. 5Th & 14th Amend.,US Constitution;10 KS Bill of Rights; Schoonover; St.v King,297 Kan 955(2013).

**Analysis.** "Multiplicity is the <u>charging</u> of a single offense in more than one count." <u>St.v Schoonover</u>,281 Kan 453,475(2006). A statute that "prohibits a course of action, or a series of acts over time...is a continuous offense." <u>Harrell v Israel</u>,478 F.Supp. 752,754-5 (E.D.Wis.1979). Johnson was acquitted of the third count. "[A]nd any conviction or acquittal based on a portion of that course of action will bar prosecution on the remainder." <u>Id</u>,755. Multiplicity creates the **potential** for—and did create for Johnson—multiple punishments for a single offense, violating the Double Jeopardy Clause and Section 10 of the KS Bill of Rights. See <u>Schoonover</u>,475.

> *[To resolve all multiplicity issues] <u>the first step</u> in navigating the sea ["a veritable Sargasso Sea"] of case law is to determine which map or chart guides the analysis...some rules apply...only to specific categories...<u>one must recognize</u> which line of cases applies.* <u>Id</u>,463¶1-2.

## A. Unit of prosecution cases—such as Johnson's with violations of just one statute—are to have multiplicity resolved by using only one relevant inquiry: the legislative intent as shown by the statute's unit of prosecution (u.o.p).

> *The sole issue in [a case with "multiple violations of the same statute"] is identification of the "allowable u.o.p."* <u>Schoonover</u>,464¶2, citing <u>US v Univ. C.I.T. Credit Corp.</u>,344 US 218,221 (1952).

> *Congress...defines...the"allowable u.o.p" [which] determines...protection...by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on this congressional choice.* <u>Sanabria v US</u>,437 US 54,69-70(1978)Ap'x#5

**1. U.O.P cases are not to use the <u>Schoonover</u> "same conduct" multiplicity test.** The KS App Ct found "[Such] is not applicable to [a u.o.p. case because] <u>Schoonover</u> dealt with whether charges in a complaint **under different statutes** are multiplicious."<u>St.v Calderon-Aparicio</u>,44 Kan.App.2d 830,848(2010)(bold text was bold). See <u>Thomas,47 U.Pitt.L.Rev.1</u>,11-12;n43-4 (legis. intent is "the only issue" for a u.o.p case). In <u>St.v Robinson</u>,303 Kan 11,210-2(2015), <u>Schoonover's</u> test was mentioned, but part one, "same conduct," was disregarded as the court directly reviewed the statute's u.o.p and noted:

> *See <u>Schoonover</u>...[US U.O.P Cases]...u.o.p can be determined by scope of the c.o.c defined by statute rather than discrete physical acts composing that c.o.c; see...<u>Olsson</u>...(relevant inquiry in a u.o.p. case is whether legislature intended punishment for the entire c.o.c or for each discrete act).*

**2. The distinctions of the u.o.p. type of case are explained in <u>Schoonover</u>:**

> *[US] U.O.P. Cases....statutory definition of the crime determines the minimum scope of the conduct proscribed..."the u.o.p." The key to determining [such] is legislative intent. ...the key is the nature of the conduct proscribed. <u>Id</u>,471-2.* Ap'x#6

> *[KS] 5. U.O.P. Cases....there is a distinction between multiple desc'n cases and cases...with multiple violations of a single statute. In a case...of multiple violations of a single statute, the test [is]: whether there is more than one conviction for the allowable u.o.p. <u>Id</u>,495-6.Ap'x#7*

**3. Thus note, <u>Schoonover</u> is a "multiple description"(m.d.) case.** Virtually all of the 20 pages of "historical analysis"(per 487¶3) and the m.d. cases cited are to "analyze [his m.d. type of] claims"(474¶4). <u>Colgate</u> was only mentioned (478¶3) to compare two m.d tests (474¶4 vs 478¶3); although here, <u>Colgate</u> "distinguished between u.o.p cases and m.d cases"(479¶3). The <u>Schoonover</u> test—which is a condensed m.d <u>Blockburger</u> test ("same conduct"466¶3, "legis. intent"468¶3)—was only to "analyze [his m.d] arguments" where "<u>same offense" is deter-mined</u> by the two-part inquiry (496¶2) ( m.d cases "examine legis. intent and apply the same-elements test" [473¶4]). In contrast—or first—the US <u>determines "same offense"</u> by "cases are divided into 2 categories": 1)"m.d cases" and 2)"viol...same statute [u.o.p cases]" (464¶2) (u.o.p cases only "examine legis.intent to determine the minimum scope of the u.o.p" [473¶4]). See: <u>Albernaz v US</u>,450 US 333,339-40(1981)(contrasts case types); <u>US v Weath-ers</u>,186 F.3d 948,952 (DCCir,1999)(if single statute,<u>Blockburger</u> not used—only legis. intent). KS regularly quotes "[US] U.0.P Cases": "...key is the nature...";eg,<u>Robinson</u>,supra,at 212.

**4. Focusing on legis. intent makes sense for a u.o.p. case;** after all, not all statutes are one-act crimes. Eg: stalking(2+acts); cap.murder(2+murders); trespass("entering or remaining,"<u>St.v Gheno</u>,No.85,619unub.[ACtKS,Feb1,2002]); escape(re stat.limitations, <u>US v Baily</u>,444 US 394,413-4[1980]). All of these would fail a "same conduct" test and, arguably, would be vacated. It is difficult to conceive of how reviewing the evidence and circumstances of a u.o.p case aids a court in ascertaining legislative intent re multiplicity.

**B. In an ongoing-type of conduct—a course of conduct—different facts and repeated impulses are inherently expected. If courts arbitrarily set criteria—eg "30 days passed"—they impermissibly create a new u.o.p which lacks "fair notice" and violates Due Process.**

*A course of conduct [c.o.c] involves a number of acts. To hold that proof of a different act under a separate count establishes a separate offense would destroy the principle that a c.o.c is punishable as only one offense.* <u>US v Jones</u>,533 F.2d 1387,1392(6Cir,1976).

*It is impossible to apply the required evidence test literally to [a u.o.p. case]...[doing so] can lead to rather bizarre analysis.* <u>Thomas</u>,47 U.Pitt.L.Rev.1,24,fn115(fn eg incl using different individuals to create multiple charges).

*[In a u.o.p case] the same evidence test will never be satisfied...never the same in fact... prosecutor will always attempt to distinguish the two charges by dividing the evidence...into distinct segments..."[I]dentical in law and fact" analysis is not useful in the u.o.p context.* <u>St.v Adel</u>,136 Wn.2d 629,633-4(SCt,1998). Ap'x#8

*The US Supreme Court has been especially vigilant of overzealous prosecutors seeking multiple convictions based upon spurious distinctions...<u>Brown</u> [US]..."The Double Jeopardy*

22

*Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units";...In re Snow,120 US 274,282(1887)...If prosecutors were allowed to arbitrarily divide up ongoing criminal conduct into separate time periods to support separate charges, such division could be done ad infinitum, resulting in hundreds of charges. Adel,supra,634-5. Ap'x#9*

**The four parts of the multiple description cases' "same conduct" inquiry are discussed below. This also shows how, here, such inquiry is inappropriate because the legislature did not indicate that any part of such an inquiry is the unit of prosecution for KSA 21-5303.**

**1. Time breaks.** Jones,supra, reviewed "inherently continuing" courses of conduct, incl

Snow,supra,(cohabitation). If weapon possession could be broken into time segments,

Jones could have been charged with 1100 days--a life sentence. Proof of 3 days but not

for the others should not result in 3 punishments. Jones,533 F.2d,1391. Similarly, Johnson

could have been charged with 90 counts. Per RN, Johnson called 2-3 times ea day until

RN and LS's involvement overlapped as they met Johnson at the park.(Stmt of Facts).

**2. Location breaks** are not prohibited by statute; thus, mult. convictions based on such

are not authorized. Adel,supra, noted that such a test could allow one to avoid punishment,

eg, drugs in two places could result in only misdemeanors: "How far apart do drugs have

to be kept?"136 Wn.2d at 635-6. In Johnson's case, the prosecutor (PA) correctly stated re

location: "it's not an element of the crime."(R.9,87). (But it is required for jurisdiction).

**3. Impulse.** Johnson's case does not show mult impulses or a break in intent--except for the

renunciation (thus all is moot). The PA stated the impulse was continuous and was redirected

to RP: "defendant is not done...problem remains"(R.9,81). If "per impulse" was the u.o.p,

Johnson could have been charged for each "impulse" to call RN -- as Jones,supra discussed.

In St.v Davis the court suggested a new solicitation impulse came after an intervening

event surely happened during a month break.Unpub.No.109,290 (ACtKS,Aug15,2014). Sub-

jective. And who's to say the break size shouldn't be a week, an hour, or a year. Further-

more, it is difficult to fathom a situation in which a continuing crime does not have inter-

vening events, eg,supra,Jones, Snow, Adel.

*In a unit of prosecution case, the court asks how the legislature defined the scope of conduct compromising one violation of a statute. The statutory definition controls...The court will not speculate as to legislative intent or read such statute to add something not readily found in it. St.v Harris,284 Kan 560,572(2007)*

Johnson's case is distinguishable from <u>Davis</u> in that there is a referral of the initial discussion to a subcontractor (LS) which continues the ongoing initial discussion. Johnson did not have an expectation that his ex-wife would be killed where he then found out she was still alive. Although for Davis, such was not the "evidence of a fresh...impulse"; rather, it was his "discovery that Pratt was still alive." Plus, as recorded, Davis stated to "put a bullet in that bitch's head."

**4. Relationship.** The State alleges that, out of nowhere, Johnson solicited RN to commit murder. RN referred Johnson to LS because, as RN advised at the joint meeting, "Lonnie [could] look into the work."(R.2,20). RN initiated the contact to set up this meeting. RN advised Johnson that he had told his buddy the details of the work.(R.21, StNo2,2:45-6:21). The impulse which formed the impetus of the offense as alleged was not a fresh impulse, but a transferred continuation of the initial impulse alleged to first result in the solicitation of RN. Johnson would have had no contact with LS without the referral by RN. The casual relationship between the interactions between RN and LS further support that the ongoing c.o.c is "same conduct"—if such was actually relevant.

RN, LS, and RP(3rd chrg) were part of an overall objective, thus interrelated. The relationship is not how individuals know each other—although such is compelling—but rather is the end goal, the intent, the underlying felony. See: <u>St.v Ulteras</u>,296 Kan 828(2013) citing <u>Bisschoff</u> ("when individual acts are part of an overall 'design or objective' they represent a continuing c.o.c"); <u>Adel</u>,supra,634-5(promoting prostitution had one goal. Court: Other cases ignored the u.o.p question; they only looked at how facts differed); <u>Robinson</u>,supra,206¶2(a c.o.c does not have to have same victim or goal; acts only need to be "related to one another in some way").

**C. The "allowable u.o.p" for KSA 21-5303 is an ongoing course of conduct because:**
**1) -ing elements are present participles, 2) -ion means ongoing, 3) "another person"**
**clearly includes many, and 4) the number of felonies solicited is the u.o.p.**

Identification of the u.o.p for solicitation appears to be an issue of first impression for KS Courts. See eg <u>Davis</u>,supra(allowable u.o.p not reached as conduct not unitary). Determination of what comprises the permissible u.o.p is a question of law involving statutory interpretation regardless of the facts of the case. Statutory interpretation is

subject to unlimited review. See <u>Schoonover</u>,supra.

> *Conduct is unitary if it is the minimum unit of conduct proscribed by the statute in question. If the scope of the minimum unit of conduct is unclear in the statute, a presumption arises that the proper unit is the c.o.c defined by the statute, rather than the discrete physical acts making up that c.o.c....*<u>Thomas,47 U.Pitt.L.Rev.1</u>,55:Rule One(1985).

**1. Present participles (-ing) verbs are required elements of the proscribed illegal conduct; eg,"requesting." Thus, the legislature authorized and required ongoing conduct and intent. But the unit of prosecution is not based upon such.**

The verb of the statutory scheme in this instance is not the determinative factor for the u.o.p. The plain language of the statute, particularly when compared to other offenses which are communication based, does not set forth with sufficient particularity proscribed conduct through the terms "commanding, encouraging or requesting."

The language used present participles (p.p.'s) to describe the communication at issue. P.p. refers to ongoing present action; as such, the verb is not discrete and numerate sufficient to be counted and broken into u.o.p's. <u>www.oxforddictionaries.com/us/</u>. Comparatively, the language for criminal threat, another offense based upon communications, utilizes past tense verbs and definitions to create discrete countable u.o.p's. KSA 21-5415; <u>King</u>, supra. As King determined, the u.o.p is the individual threat. A "threat" is defined as "communicated intent." KSA 21-5111(ff). The use of past tense verb reflects the need to be able to discretely determine the number of times the proscribed conduct has occurred in order to determine the allowable u.o.p. Conversely, the use of p.p describes an ongoing action that is unable to be discretely enumerated as it is incomplete. Therefore, the term "commanding, encouraging or requesting" is insufficient in determining the allowable u.o.p in this matter as it fails to describe completed conduct. If the legislature intended for the command/encourage/request to be the basis, it could have drafted language which utilized the past participle of infinitive versions of the word, ie "it shall be unlawful to command..." or "commission of a felony commanded by." Therefore, under the language of the statute the commanding, encouraging or requesting provisions of the statute cannot form the basis for determination of the allowable u.o.p.

a.  *[The US Supreme Court] does not consider grammar a mere technicality [and] has stated that "Congress' use of a verb tense is significant."* <u>US v Wilson</u>,*503 US 329,333 (1992)*. <u>US v Ketchum</u>, 201 F.3d 928,933(7Cir,2000).

With "ing"–present progressive tense–Congress meant to prohibit acts in progress and those "on a regular or continuous basis": ongoing. Id,933,935. The use of a present participle (p.p) is "indicating a different intent": a "continuing process or activity, not one that has a finite beginning and end." Detention of JR,912 p.2d 1062,1067(ACtWN,1996). See: St.v Sprung,294 Kan 300,309(2012)("fondling or touching" is "suggesting that any number of" act is one); American Gas v SEC,134 F.2d 633, 648(USACtDC,1943)(pp controlling "conveys the idea of process or continuance"). See contra, McClanahan v St.,324 SW. 3d 692,694(ACtAR,2009)(statute's "specific...finite acts," eg dissects, are not continuing).

**b. One act is not enough to meet a p.p's "ongoing" definition.** See eg, re p.p's: JR,supra, 1067 (examining must be"continually and constantly");Sonitrol v Seattle,528 P.2d 474, 478-9(SCtWN,1974)(operating and conducting); Maziarka v Colvin,983 F.Supp.2d 991, 1005 (USDCtIL,2013)(treating); S.D.Baykeeper v US D0D,No.02-CV-0499,Lex.at*10 (USDCtCA,May6,2010)("isolated or sporadic" is not ongoing).

**c. Current action is required by a p.p with more foreseen.** Johnson's intent had to continue into RP (3rd chrg) to be ongoing. See Verizon v Hopewell,26 NJ Tax 400,417(2000)(pp providing: "must be...currently providing"). Verizon noted: Exxon (refused to apply statutory present tense "discharging" to past conduct); Laube (proving vs having proved); Pohl (pp falling: "a state of action in progress"). See also: Ketchum,supra,("present...ongoing... future"); US v Hull,456 F.3d 133,145(3Cir,2006)(pp committing:"connotes present, continuing action"); Bosserman v Hayes,89 Va.Cir. 84,87(CCtVA,2014)(providing: tense implies ongoing, not subsided); McMahon v Carroll,No.04-C-384,Lex.at*118(USDCtWI, Mar9,2007)("continuing" need: must be present, future: lasting, enduring, constant).

**2. The suffix -ion indicates ongoing activity, eg solicitation.** -ion: "action or process...state or condition."(Process:"series of actions, changes, or functions bringing about a result") (State:"a state of being.)(Condition:"mode":"a method of doing").Amer.Her.Dic.(Note p.p's).

**3. "Another person" encompasses many individuals; eg RN,LS, and RP.**

**a. The conspiracy statute clearly shows that "another person" can include many individuals.** See eg <u>US v Fishman</u>,645 F.3d 1175,1190(10Cir,2011)("changes in the cast

of characters ["<u>the other members</u>"] do not preclude a finding of a single...conspiracy").

*(a) Conspiracy is an agreement with <u>another person</u>... (b) that <u>any other person</u> which whom the defendant conspired... (c)...to one or more of the accused co-<u>conspirators</u>....*KSA 21-53<u>02</u>.

KSA 21-53<u>03</u> Solicitation is the requesting of an agreement to "another person."

**b. Throughout KSA, "individual" and "person" are used together within a statute(s).**

These are deliberate word choices and different intents. Eg, KSA: 21-5928 ("referring an

individual to a person"); 58-4723 ("employing a controlling person or any individual").

In 21-5417 "dependent adult means an individual". In 21-6815, "human being" is one.

**c. KS 77-21 Rules of Construction (3).** Singular may be plural, as applied in: <u>Erhart v Kaw</u>,

91 Kan 914,917-8(1914)(singular may be several); <u>Fidelity v Morris</u>, 130 Kan 290,297

(1930)(attorney can be three); <u>St.v Smouse</u>, 49 Iowa 634,636(1878)(person can be persons).

**d. Definitions.** Person incl "(3) an individual...(4) individuals..."(Note: #4 is plural.)<u>Anderson's</u>

<u>Law Dic</u>. In <u>Black's</u>, individual is"a single person as distinguished from a group...."(Ie,with-

out the quantifier of "single," person could be a group.)<u>In re Spoonemore</u>, No.05-17380,

unpub.at*12(USBankRCtKS,May21,2007). In <u>Anderson's</u> and in <u>Balentine's</u>, "individual" is

used repeatedly to indicate only one—not "person." See also: <u>Lower v Bd of Dirs</u>,274

Kan 735,745(2002)(cemetery board is "a person"); <u>Extendicare v St...Health</u>,216 Kan 527,

529(1975)(Dr Bletz and Phys Associated are "a person"); <u>Town...Mesilla v Las Cruces</u>,898

P.2d 121,123(ACtNM,1995)("person is a generic term"; "inclusive, rather than exclusive".

**e. Platform solicitation.** A solicit (or threat) directed to hundreds of individuals constitutes

the same culpability and faces the same punishment as if such was directed to only one. See:

<u>King</u>,supra (number of persons does not determine the u.o.p); <u>People v Rubin</u>,158 Cal.Rptr

488(ACtCA,1979)(crowd to kill Nazis); <u>St.v Schleifer</u>,121 A.805(SCtCT, 1923)(inciting a large

group to commit felonies). A solicitation could be made through an ad in media—eg Facebook/

Craigslist—read by thousands, or to a group. Such might be legal if person had to be one named

individual. Regardless, it is unreasonable for such to result in thousands of charges—or three.

f. **Statutory definitions.** KSA 21-5111 defines: (b)"another" as a person or persons—singular and plural; (t)"person" as "individual, public or private corporation, government, partnership, or unincorporated association"; (cc)"solicitation" as "to command,...or advise another to...." Examination of such, yields little relief to the ambiguity of the statute. Both "another" and "person" fail to exclusively designate a definition of a single human being. See contra, KSA 21-5402 (Murder is the killing of a "human being"; St.v Littlejohn, 298 Kan 632(2014)(Human being may only be killed once). Instead, "another" remains exclusively subject to singular or plural applications while "person" is either an individual, or differing permeations of groups of individual human beings without requirement of formal incorporation. See eg King,supra(re "another" within context of threat). Within the context of the KS Criminal code definitions, the term "another person" fails to specify a clear u.o.p as a matter of law based upon the number of human beings solicited, particularly where person is defined as encompassing groups of individual human beings.

**4. The number of felonies solicited is the unit of prosecution. The intent to have a felony done is the relationship—the single objective. Johnson's third charge acquitted him of having the ongoing intent to have the single felony committed.**

The intent to commit a felony is the only criminal part of solicitation. Eg, the act of "requesting," by itself, is legal. See eg: St.v Thompson,287 Kan 238,248(2009)(possession is only illegal when there is intent to manufacture meth. Quantity of charges is based on the illegal intent); Sprung,supra,294 Kan,310("inclusion of a unitary intent lends additional support...that the legislature intended to create a single u.o.p").

KSA 21-5303 language identifies a specific singular object which may not have requesting or encouraging—"a felony." The statute goes on to reference "the felony" as opposed to "felonies." This specific singular language has been dispositive in other contexts of the criminal code related to search and seizure. See eg KSA 22-2501; St.v Daniel,291 Kan 490(2010);Arizona v Gant,556 US 332(2009)("a crime"vs"the crime").The specific reference to a singular felony is indicative of legislative intent to punish those who are attempting to commit offenses via others so as to avoid liability for the offenses solicited. It

is a reasonable interpretation that the legislature would want to extend criminal liability for all offense solicited to those attempting to escape prosecution by employ of intermediaries, particularly where the attempt and conspiracy offense do not reach the conduct at issue.

The legislative history indicates the specific offense of solicitation was designed to reach those who are inducing crimes but escape criminal liability as their participation does not exceed mere preparation to justify an attempt charge, or whose contact was with informants or undercover officers who had no intention of committing the offense and cannot form the basis for a conspiracy. See Sexton,supra. If the purpose is to extend liability to those who would otherwise go unpunished, then the logical extension is that they should be punished for each offense they were commanding. Eg, if ordering individuals to rob a bank at gun point, take hostages, and kill anyone who gets in the way, one count of solicitation is woefully inept to hold a mastermind accountable for aggravated robbery, kidnapping, and multiple murders. However, solicitation for each felony with commanding would cover the gap in the criminal code which the legislature sought to fill with KSA 21-5303. Therefore, when considering the plain language of the statute and the legislative history behind it, the permissible u.o.p should be determined by the number of felonies solicited.

### D. A solicitation is an attempted conspiracy; thus, charges and punishment must be less than for a completed conspiracy.

If multiple solicitation charges were allowed per felony, a prosecutor could turn a conspiracy (where parties agree to do a felony) into an absurd amount of solicitation charges (the requesting to get others to agree). Had RN, LS, and RP agreed to do "something," all would have been one conspiracy: a greater charge with lesser punishment than three solicits. *Every solicitation is an attempted conspiracy, and...would be expected to carry a lesser maximum penalty than a "completed" conspiracy.* People v Rehkopf,422 Mich. 198,213(1985). Similar:US v Anzalone,43 MJ 332,336:no.20(ACtUS,1995); Schwenk v St,733 SW.2d 142,148 (ACtTX,1987); People v Brenton,237 ILL.App.3d 355,361(1992)(comparison).There can only be "one conviction of murder for the killing of any single victim." Wood v Milyard, 721 F.3d 1190,1197(10Cir,2013). An attempt to commit a crime is cognate to the completed crime.

**E.  The conspiracy multiplicity test is appropriate for solicitation.** In People v Morocco,

191 Cal.App.3d 1449(1987)(sol.of murder), court noted Cook (conceptual relationship

between solicitation and conspiracy) and Miley (six counts of soliciting murders were

"one package") then stated solicitation multiplicity is determined by the conspiracy test:

one charge if "all were tied together as stages in the formation of a larger all-inclusive

combination, all directed to achieving a single unlawful end result." Id,1453 quoting

Blumenthal v US,332 US 539(1947). The 10thCirCt uses "the common objective test."

US v Beachner,555 F.Supp. 1273,1276(USDCtKS,1983). Eg,10Cir: US v Roberts,14 F.3d

502,511(1993)(one goal: mult charges are not created by changes in time, location,

members, or knowledge of such); US v Petersen,611 F.2d 1313,1326-7(1979)(diverse

activities: one count per "common objective test." Knowing each other is not necessary).

Pham v St. said the Schoonover test cannot be used for multiple conspiracies, each

which can last for years with many different acts: a continuing offense. "Instead, the

proper inquiry is 'what unit of prosecution has the legislature intended.'" 281 Kan 1227,

1254-8(2006). In contrast, Pham's multiple description  charges—kidnap and murder—are

controlled by Schoonover. Pham,at 1262. See US v Eppolito: "conspiracy is...a continuing

crime."543 F.3d 25,47(2Cir,2008) citing Toussie v US,397 US 112,122(1970).

**F.  Solicitation cases support that the authorized u.o.p. is per objective.** In general, the "uop

is not dependent upon...a single victim."Schoonover,472. But in solicitation of murder, in KS,

this is the determining factor. In St.v Sommerfeld "each solicitation count required proof that a

different individual was being targeted for murder."No.80,404,unpub.at*8(ACtKS,Nov24, 1999).

Johnson's case is similar to Melina v People,161 p.3d 635(SCtCO,2007): solicits to

multiple individuals over a year were one transaction to kill one victim. Specific

individuals "serve as corroborating evidence of his intent, not evidence of multiple acts."

*To prove solicitation...must present evidence of the circumstances..."strongly corroborative" of...spe-*
*cific intent.... This [prevents] false charges...out of misunderstanding or for purposes of harassment....*
*[R]isk is greater...because solicitation may be committed merely by speaking.* Id,640-1. Ap'x#10

Circumstances and discussions with others "may span a long period of time." (Even with

a statute using finite verbs!) Court noted <u>Jacobs</u> (30 acts: one objective; does not need to be to a particular individual). <u>Id</u>. See <u>St.v Mead</u>,27 P.3d 1115,1130,n10(SCtUT,2001)(solicits and murder acts over years are separate showings of a single intent: one count, compared to where timing was important due to multiple statutes).

The State alleged that Johnson encouraged or requested RN, LS, and RP to commit the same crime--same victim, same harm--with conversations presented as a common objective. RN even directed Johnson to talk to LS about the same details. However, because Johnson spoke to three different individuals, he was charged with three counts which resulted in two consecutive sentences.

**G. Grouping, per 18 USCA 3D1.2, is appropriate for solicitation.** This statute requires that, for all sentencing, "all counts involving substantially the same harm shall be grouped together," that such harm incl "when counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." See: <u>US v Wilson</u>,920 F.2d 1290,1293-4(6Cir,1990)("grouping" was required: six solicitations of murder had the same objective); <u>US v Wynn</u>,987 F.2d 354, 358-9(6Cir,1993)(all calls to two others to murder one were one violation, per <u>Wilson</u>); <u>US v Kuchinski</u>,469 F.3d 853, 859(9Cir,1996)(Ct was correct to use 18 USCA 3D1.2 to group two counts based on same act).

**H. Leniency for defendant.** If this court disagrees that KSA 21-5303 requires or allows an ongoing c.o.c such as Johnson's, it must then at least acknowledge that, like in <u>Sprung</u>, supra, KSA 21-5303 fails to clearly define the u.o.p. See <u>Schoonover</u>,472¶3 (separate convictions only if authorized "clearly and without ambiguity").Ap'x#11. Thus, this court must apply the rule of leniency, interpret ambiguity in the favor of Johnson, and reverse both convictions as being multiplicious with Johnson's third charge that he was acquitted of. See <u>Harrell</u>(An acquittal on a portion of a c.o.c, bars the remainder).Supra. "Multiplicity is the <u>charging</u> of a single offense in more than one count." <u>Schooonover</u>, 475. "Ambiguity should be resolved in favor of lenity"; "doubt will be resolved against turning a single

transaction into multiple offenses." Bell v US,349 US 81,83-4(1955). "[R]easonable

doubt...in favor of the accused." Famway,supra; St.v Coman,294 Kan 84(2012).

**I. The way the State presented evidence supports a unitary c.o.c.; the malicious way they created such charges caused this issue.** The charge with LS relied upon the testimony of RN; LS's testimony was needed to give RN more credibility. Prelim court: RN was "singularly unimpressive as the State's witness [but] different witnesses corroborate one another's testimony."(R.2,85). However, separate charges must be able to stand alone.

The "prosecutor will always attempt to divide charges"(Adel,supra) and did so here. LS and RN were initially one charge(R.1,7). Prior to offering a plea deal, the State divided the charges (R.1,15) using a technique called "adding kickers"—to "kick them off" in a plea. This makes the worse-case scenario absurd, forcing the plea offer—often the max penalty for one charge. Consider 95% of cases are settled in plea deals, prisons are overcrowded, KS has one of the highest conviction rates—or of those who "accepted" a plea. After Johnson rejected such an offer, the State bought testimony to create a 3rd charge (R.1,100). RP was paid an out to a ten-year prison sentence.(R.15,50-4) Johnson was acquitted of this charge thus equating RP's testimony with perjury. Still, this prejudiced Johnson: RP—even though non-believable—added likelihood to the other charges. Prior to trial, all charges should have been one. The multiplicity problem was caused by how the prosecutor maliciously and unethically handled Johnson's case.

**J. Prosecution in the matter exceeded the allowable unit of prosecution.** Johnson was convicted of two counts of solicitation. As a murder may only be committed once, this is a single felony solicited which results in one allowable u.o.p. See Littlejohn,supra(human being may only die once).

**Conclusion.** Because Johnson was convicted for two counts of solicitation and acquitted of one count based on an ongoing course of conduct, and because the statute is clear that there can be only one prosecution, three charges are multiplicious. As such, the convictions must be merged into the acquittal—reversed and vacated—as they also violate Double Jeopardy.

**ISSUE 3.** The state presented insufficient evidence A) that Johnson solicited RN or LS to commit first-degree murder, B) that the victim was killed as the jury was required to find.

**Preserv./Std Review.** Court typically considers whether (viewing evidence in light most

32

favorable to the State) a rational factfinder could have found Johnson guilty beyond a reasonable doubt. St.v Charles,298 Kan 993,1001(2014). Johnson needs not make such challenge before trial court to preserve such issue for appeal. St.v Farmer,285 Kan 541,545(2008).

**A. Insufficient evidence of solicit.** From the evidence and arguments presented in this trial, it is clear that Johnson never specifically stated that he wanted RN or LS to kill his ex-wife. Rather, the State relied on the prosecutor's interpretations of RN and LS's interpretations of Johnson's statements, and the prosecutor's interpretations of the police's interpretations of such interpretations. Because the State presented no evidence that Johnson even once requested or encouraged RN or LS to kill his ex-wife, Johnson's convictions must be reversed.

**1. Stacked inferences.** A jury's verdict may be supported by circumstantial evidence, if that evidence provides a basis from which the jury may reasonably infer the fact in issue. St.v McBroom, No.106,696(Kan.Jun6,2014). However:

> *[The 10CirCt) has warned against sustaining a conviction based on a mere suspicion or speculation; "While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and caution must be taken that the conviction not be obtained by piling inference on inference."* US v Dunmire,403 F.3d 722,724(10Cir,2005) (citations omitted).

> *Guilt may never be based on inference alone. Presumptions and inferences may be drawn from facts established, but presumption may not rest upon presumption or inference on inference.* St.v Cruz,15 Kan.App.2d 476,490(1991)(citations omitted).

> *"Inferences may be drawn only from facts established...[and] where reliance is placed upon circumstantial evidence, the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances."* McBroom,at*21 (Johnson J dissent) (quoting St.v Williams,229 Kan 676,649[1981]).

**2. The imminence requirement** under Brandenburg,US is not satisfied by constitutionally protected speech that "amount[s] to nothing more than advocacy of illegal action at some indefinite future time." Hess v Indiana,414 US 105,108-9(1973). In Johnson's case, the most RN might ever do was "look into it" (following her).(R.9.100). That possibility ended when LS replaced RN. With LS, in KS, the only possibility was that he and Johnson might meet again to further discuss work. Even for that, there was no actual date set.(R.9,124). In M0, Johnson was hesitant, hedging, and wanted to think about it more.(R.9,156-7).There is insufficient evidence of imminence.

**3. Discussion only is not illegal—even if it is about an illegal act.** With RN, there was

nothing more than discussion, regardless of the topic. With LS, certainly the first meeting was discussion only; thus, there was never any illegal act in KS. Johnson's case, at worst view, is similar to St.v Gains,431 So.2d 736(DACtFL,1983) summarized by Enoch and Jones as:

> Gains had "entered into serious discussions" with an undercover... This was not solicitation... because Gains reserved to herself the right to determine later whether, not just when, the "hit" would actually occur. Gains "reached the threshold of the crime, but never crossed it." [T]hinking about an illegal act is not, by itself, a crime. Enoch v St.,95 So.3d 344,362(ACtFL,2012). Because present intent is a requirement for solicitation, a defendant cannot be convicted of solicitation where the uncontroverted evidence shows that the defendant would decide at a later time if he or she wishes the "hit man" to proceed. Jones v St.,908 So.2d 615,619(ACtFL,2005).

**4. Solicitee.** There is insufficient evidence that Johnson was the solicitor. This is not a question of entrapment; rather, it's stating that LS was the solicitor while Johnson was the solicitee. Consider if LS's and Johnson's roles were reversed. If LS was hesitant and wanted to think about it, if Johnson kept urging LS to decide, then Johnson would obviously be the solicitor of something.

Johnson's case is similar to People v Salazar,140 Mich.App 137(1985). Salazar never asked to have job done, only agreed and put informant off. Then, informant asked: "did he still want me to take care of that job for him, and [Salazar] said, yes." It was the informant "who did the inciting, inducing, and exhorting...defendant was only responding to [informant's] solicitations."Id,147-8. In Johnson's case, LS initiated all contacts.(R.9,156,159, 161). LS made all requests while Johnson only agreed to pay(R.9,124) for what Johnson made clear was investigative work(R.9,154,161). LS acted with the intent to "fulfill the solicitation."(R.9,149,122). When Johnson showed reluctance, LS asked him if he still wanted any work done.(R.9,156). Unlike Salazar who said yes to a similar solicit, Johnson does not answer yes but rather becomes hesitant, hedging and wants to think about it—all, what a solicitee does; yet, LS pushes more.(R.9,156-7). See: St.v Anderson,618 NW. 2d 369,373-4 (SCtIO,2000) ("one may not be solicited into soliciting. He is either the solicitor or solicitee." Affirmative response or quote price after being solicited is not being a solicitor. Ap'x#12.); St.v Swann,142 Ohio App.3d 88,90(ACt,2001)(solicitation crime does not prohibit acceptance; Swann was solicitee; distinction makes sense as law should be slow to punish conversation alone).

**5. Inuendo.** LS agreed that Johnson's case is "entire[ly]...innuendo or interpretation"(R.2, 82) and

inferences(R.9,152). "An inference...built on an innuendo...doesn't amount to a hill of beans."

Pettway v Pepsie,337 So.2d 757,760(SC\AL,1976). See: In re...Mainero,990 F.Supp.1208,1226(US-DC\CA,1997)("inference and innuendo" is not reliable evid); US v Mullen,451 F.Supp.2d 509, 529(USDC\NY,Feb24,2006)("rumor or innuendo" is not reliable evid.); Taylor v Gasor,607 P.2d 293, 295(SC\UT,1980)("mere suspicion or innuendo" is not "clear and convincing proof").

**6. Impressions.** Before meeting Johnson, LS received info that caused him to form an opinion of what Johnson wanted (R.9,149,163). Thus, even before he saw Johnson or spoke a single word to him, it's clear that LS was already operating under the belief that Johnson wanted to kill his ex-wife; LS's goal was to make Johnson admit that.(R.9,122, 149). However, the most that LS had was "a different impression"of Johnson's statements. (R.9,152)."Impression" means "a vague notion, remembrance, or belief." "Notion" (not a "vague notion") means: opinion; "a fanciful impulse; whim."Amer.Her.Dic, 4ed. (AHD).

> *Mere suspicion, however strong, is not enough and juries are not permitted to base verdicts of conviction on suspicion.* St.v Doyle,201 Kan 469,489(1968).
> *"To be sufficient, the evidence supporting a conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt."* Dunmire,supra,at 724.

What LS's "different impression" was, is not in any testimony. RN's impression—not an "assumption or logical inference"—of what "following her" meant, went unexplained.

> *[The KS Sup.Ct does] not permit juries to speculate about what might have happened, and we should not engage in such guess work either.* St.v Harris,297 Kan 1076,1093(2013)

**7. Intent.** For solicitation, the State must prove that an individual is "commanding, encouraging or requesting another person to commit a felony" and that the individual is doing so with the specific intent that the another person commit such crime. KSA 21-5303; St.v DePriest,258 Kan 596,604(1995);see also St.v Brown,291 Kan 646,655(2011)(discussing specific intent). Therefore, the State must prove both the actus reus and mens rea in order to sustain the convictions.

The State failed to meet its burden to prove that Johnson intentionally was encouraging or requesting RN and LS to commit the felony of first-degree murder. Additionally, the State failed to meet its burden to prove that, if Johnson did solicit RN or LS, that he did so with the specific intent that they specifically commit the felony of first-degree murder.

Even by LS's own testimony, the conversations that he had with Johnson did not coincide with his pre-conceived beliefs. Although LS repeatedly pressured Johnson to state that he wanted his ex-wife killed and cut Johnson off several times as he kept talking about investigating on LS's recording, Johnson never stated to LS that he wanted him to kill her. The evidence showed that Johnson discussed with RN and LS particular work that he wanted done—including cleaning up and hauling off junk and old vehicles, and investigating the actions of his ex-wife. The evidence lacked the sufficient connection, based on these conversations, to support a conviction for solicitation to commit first-degree murder.

> *The evidence, when viewed in its entirety, must generate more than a mere suspicion of guilt, and where such evidence is equally consistent with both guilt and innocence the conviction cannot be sustained.* US v Butler,494 F.2d 1246,1252(10Cir,1974).

Because Johnson never specifically indicated he wanted LS to kill his ex-wife, the State relied on LS's interpretations of the conversations and his assumptions about Johnson's intent, in order to prove Johnson's intent to the jury: RN, who at the time had never told the police that Johnson asked him to kill Annie. The evidence presented by the State showed different conversations with LS that involved construction work and investigative work. However, based on LS's pre-conceived ideas of the job he was sent to perform, LS developed inferences and assumptions about what Johnson "really meant." The State relied on these inferences to persuade the jury that LS's inferences correctly reflected Johnson's objective intent.

The evidence failed to show that Johnson specifically was encouraging or requesting that RN or LS kill his ex-wife. Rather, at most, the evidence shows that Johnson was discussing having them follow or investigate his ex-wife. This discussion—the majority of which was either in M0 or could have been—falls well short of a "murder for hire."

8. In addition to the Statement of Facts, which manifests insufficient evidence, consider: ●"Overdose," in RN's statement to OPD about what Johnson said, means "to take or cause to take too large a dose"(nothing about death).AHD. ●Both "disappear" and "gone" are common phrases and do not necessarily mean to kill someone. Eg: US v Lovett,59

MJ 230,232-3(USACtArmFor,2004)(he "wanted his wife to disappear":gave photo...asked cost. Ct: this did not mean murder); <u>Cheek v Edwardsville</u>,514 F.Supp.2d 1236,1245(US-DCtKS,2007)("the City wanted him gone"); <u>Humphrey v Williams</u>,295 GA 536,556(2014) ("wanted him gone" meant away from them). ●RN manifested to the court that, as he testified, he "make[s] stuff up on people in court."(R.2,36). If a witness tells the court that he lies in court and that he can't remember "a lot," then likely he cannot be charged later of perjury which could violate parole, etc. Perhaps that he makes stuff up, was his most honest statement. ●Some cases do involve code—LS's undercover work history was 4 yrs in narcotics (R.9,131-2)—but there is foundation to support code, never just speculation. Eg: <u>St.v Hewlett</u>,No.78,079,unpub.at*1(ACtKS,Mar19,1999)("187 someone" is known slang for murder; plus, Hewlett helped dig grave); <u>US v Walker</u>,720 F.2d 1527,1531(11Cir,1983)("lettuce": is common code word in drug trade); <u>People v Neal</u>,954 NE 2d 358,361(ACtIL,2011) (based on 15 yr of experience, officer knew "blows" refers to heroine).

**B. Insufficient evidence that Johnson killed he ex-wife.** Jury instr.9-10(R.15,140-1)requires:

> To establish this charge [of solicitation of murder] each of the following claims must be proved: 1. The defendant intentionally encouraged or requested [LS / RN] to commit murder in the first degree... 2. This act occurred....
>
> The <u>definition of murder</u> in the first degree, the felony charged to be the subject of the solicitation is as follows: 1. The defendant intentionally <u>killed</u> Annie Johnson. 2. The killing was done with premeditation. 3. This act [was killed] occurred on or between [Mar-May,2012] in JoCo,KS.

This instruction requires that the jury determine that she was killed before May 22nd in JoCo. But she wasn't even aware of any of this, much less killed. Had she been, it would not have been on or before the 22nd, and likely could have happened outside of JoCo—she worked and traveled in MO and temporarily lived in the motel (unknown location). Even if the tense of the killing is improperly overlooked, the killing end date and location are mandatory.

**Conclusion.** The State presented insufficient evidence that Johnson intentionally was encouraging or requesting—or that he encouraged or requested—RN or LS to commit first degree murder. There was no evidence that such murder actually happened at the required date span(s) and location. As such, Johnson's convictions must be reversed and vacated.

**ISSUE 4.** The State impermissibly misstated controlling law within the jury instructions describing the renunciation defense. The changed words have different meaning which created new law, violated Johnson's right to due process, and failed to instruct the jury of Johnson's defense.

In Jury Instruction No.16 & 17, the words from the statute (renunciation, manifesting, and purposes) were replaced with similar yet stricter words (abandonment, demonstrating, and plans).(R.15,143-4)

**Preserv./Std of Rev.** Jury Instruction No.16&17 broadened the scope of the felony by narrowing the defense of renunciation. Therefore, more specific acts had to be done by Johnson. Thus, he was deprived of fair notice and a fair opportunity to prepare his defense, ie, denial of due process. This invalidates his convictions. See St.v Wade,284 Kan 527,533-4 (2007)(instruction broadened the scope of murder and burglary charges). Review is determinative of Johnson's case and needed to prevent a manifest injustice. See Gomez,supra.

*A misstatement of controlling law must be reviewed on appeal, regardless of timely objection at trial, to protect a defendant's right to due process. When a misstatement...is made deliberately, it is outside the considerable latitude given to prosecutors.* St. v Gunby,282 Kan 39,63-4(2006).

*[The KS Sup.Ct] has held numerous times that the trial court has a duty to define the crime charged, stating the essential elements of the offense... The federal courts have held that the failure to do so constitutes "fundamental error" or "plain error" and is reversible, even in the absence of an objection at trial.* St.v Hankins,774 P.2d 354,unpub.at*5-6 (SCtKS,May26,1989).

**Analysis.** KSA 21-5303(c) states:

*It is an affirmative defense that the actor, after soliciting another person to commit a felony, persuaded that person not to do so or otherwise prevented the commission of the felony, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purposes.*

However, the jury was instructed in No 16&17 (R.15,143-4):

*It is a defense...that the defendant, after soliciting another person to commit a felony, persuaded that person not to do so or otherwise prevented the commission of the felony, under circumstances demonstrating a complete and voluntary abandonment of the defendant's criminal plan.*

The KS Supreme Court has stated that similar word swapping is impermissible. In St.v Irons the compulsion defense instruction was reversible error because it stated "immediate" rather than imminent" as in the statute. Court reviewed the dictionary, found words were indeed similar, but noted that "immediate" is much stricter." 250 Kan 302,307-8 (1992) relying on St.v Hundley,236 Kan 461,464(1985)(same words and outcome re PIK self defense instruction). Johnson's case is similar, multiplied by three word swaps. See also St.v Waters,189 SW 624,624(ACtM0,1916)(willful and unlawful are not interchangeable).

38

"Renounce" and "abandon" are similar only in that a person is separated from something. The difference is in how each happens. **Renounce**: "give up on...cast off...refuse further association with...repudiate" (means to "refuse to accept or support"). Webster's New World College Dic.4ed (WCD). Here, there is no specific movement, only the mental association is broken; at most, the object goes away. Doing nothing further can renounce. **"Abandon** implies leaving a person or thing...(to abandon a drought area)."WCD. Eg, KSA 21-5605 ("abandonment of a child...is leaving a child"). Objective, physical action.

"Manifest" and "demonstrate" are similar only in that they typically result in clarity. The difference is in how that exists. Manifest is a mental impression—required by whom is not stated in KSA 21-5303. **Manifest**: to appear or to be apparent to the senses, esp to sight or mind; show itself; clear; evident. WCD. Perhaps by a demonstration, but such is not required. No action or explaining necessarily needs to be done for a subject to be clear and evident. **Demonstrate**: to explain or make clear using examples...prove...show by reasoning (means an explanation of an act...argue or talk in a logical way;to point out.) WCD. Eg: demonstrate a vacuum requires a step-by-step show and explain of each feature. Then the vacuum is likely clear, but that is irrelevant. Here, a jury looks for specific completed acts—not clarity.

"Purpose" and "plan" are not similar. Purpose is the goal—a mental thought only the actor knows. **Purpose**: "something one intends to get or do; intention; aim" WCD; goal; result Amer.Her.Dic.(AHD). "**Plan** refers to the detailed method formulated beforehand for doing or making something (vacation plans)." WCD. Obvious steps.

The words of this defense are not actions the actor must do; they do not insinuate certain words must be said; they are not required to be lasting. Rather, they only describe the "circumstances"—which means "a fact or event accompanying another, even incidentally"; chance; luck(WCD);"the sum of determining factors beyond willful control"(AHD).

Johnson's trial strategy was prejudiced by using this word swap to direct the jury to look for specific acts of abandonment and demonstrate. In turn, the jury was prevented

from considering how it was apparent that Johnson simply gave up and ended his purpose. Therefore, Johnson's right to present his defense was prejudiced; eg, he would have pursued a different trial strategy and testified to explain. This affected Johnson's critical decision to hold his Fifth Amendment rights and not testify.

Johnson' s trial strategy was to manifest through the testimony of RN and LS, eg: 1) how Johnson passively (his nature:dislikes conflict, gets taken advantage of, bullied [R.15,98]) ended all dealings with LS though hesitancy, reluctance, and avoidance (incl. R.9,122,156-8)—an increasing renunciation—and never called LS back; 2) how he simply parted ways with RN; 3) how at most, all that existed was a purpose, ie, discussion.

This word swap "places undue emphasis on the defendant's immediate conduct and obliterates the build-up of [Johnson's desire to ditch LS] over a long period of time." (Quoting St.v Hodges,241 Kan 183,187[1987]). Furthermore, the prosecutor directed the jury to look for a specific instance of demonstrating when he stated: "[Johnson] didn't say 'don't do it'...'I don't want this done.'"(R.15,147-8). The word swap directed the jury to look for evidence of canceling a "plan" when no plan ever existed.

Rules of strict construction: "ordinary words are to be given their ordinary meaning...statute should not be read to include more or less than that readily found within it."St.Bd of Nursing v Ruebke,259 Kan 599,612(1996). If the statute's words are so misunderstood that they need changed, then such are unconstitutionally vague.

In KSA 21-5303(c) the renunciation defense is as much of an element of the crime as the requesting. "The elements of the crime must be determined wholly from the statute" (St.v Shirley,277 Kan 659,665[2004]) and "are established by legislative act"(St.v Jackson,239 Kan 463,471[1986]). "There can be no conviction except for such crimes as are defined by statute... it's not [court's] function to create a crime...."Sexton,supra,232 Kan,544. **Conclusion.** By limiting and changing the solicitation defense, the State impermissibly created a different level of the crime. This also violated Johnson's Fifth Amendment

rights and right to Due Process. There is a real possibility that the jury would have reached a different verdict had the renunciation defense been instructed, or if it had not been changed. As such, Johnson's convictions must be reversed for retrial consideration.

## ISSUE 5. Insufficient evidence to disprove Johnson's defense of renunciation.

The State failed to disprove that Johnson persuaded or prevented RN and LS from doing the alleged felony. Instead, the State relied on telling the jury that Johnson didn't say the magic words. It is clear, however, that Johnson ended his relationship with both RN and LS in Kansas. Therefore, Johnson's convictions must be reversed.

**Preserv./Std of Rev.** Johnson raised this issue at trial.(R.15,88-9,144).See St.v Charles,298 Kan 993,1001(2014)(court considers issue);St.v Farmer,285 Kan 541,545(2008)(considers even if not raised at trial). Review is determinative of the case and is needed to prevent manifest injustice.

**Analysis.** Once the defendant raises the renunciation defense,"State has the burden of disproving beyond a reasonable doubt"(KSA 21-5108[c]), and had to prove Johnson did not:

> *persuaded that person not to do so or otherwise prevented the commission of the felony, under circumstances manifesting...* KSA 21-5303(c).

Yet, the State's only attempt to disprove was when the prosecutor (PA) told the jury:

> *[Johnson] said "I want to think about it." Not, I don't want this done, Not, I don't want this to happen, but "I want to think about it a little bit." ...He did nothing to persuade RN not to commit this crime...and the Instruction says persuaded that person. ...At best, maybe this applies to Sgt Stites [LS], but not really.*(R.15,147-8).

However, that statement—"Instruction says persuaded that person"—was a misstatement of controlling law. Such informed that persuade was required and was the only option.

> *Instructions are not to direct the jury's attention unduly to one isolated fact or piece of evidence.* Hundley,supra,236 Kan,465.
>
> *A misstatement of controlling law must be reviewed on appeal, regardless of a timely objection at trial, to protect a defendant's right to due process.* Gunby,282 Kan,63-4.Supra.

Similarly, the PA intentionally deceived the trial court during Johnson's motion of acquittal:

> *The withdrawal defense requires the defendant was trying to persuade that person to not commit a crime. There has been no evidence that the defendant ever tried to persuade [RN] to not commit the crime. With [LS], again,...is required to persuade him....*(R.15,89).

Again, incorrect: "persuade" is not required. There are two alternate means. But for reasons very advantageous to the State, the PA instructed the jury (to "help...in applying the law"[R.15,139:JI#4]), and misled the court, that persuade is required.

The PA stated Johnson's wanting to think about it was not abandonment, but offered no evidence of how wanting to think negated all of his active and passive persuading.

Nothing was required to persuade RN and LS to not do a felony—or legit work—which no one ever had any intent to do. Discussion only. RN would only "look into it"(R.9,100) to reply about what he thinks(R.2,15). And later, RN only called back to follow-up on employment(R.9,100). When RN passed Johnson off, it was because "Lonnie...[can] look into the work"(R.2,20)--still not to actually do anything. There was no request. Not even a date set to meet again.(R.9,124). So, it would be illogical to say "Don't do it"—the magic words the PA required. KSA 21-5303 does not require "magic words" to persuade.

Persuade: "to cause to do something"(Cause:"anything producing an effect or result.") WCD. To persuade not to is to dissuade (SYN discourage. AHD.) Discourage:(1) try to prevent by raising obstacle. WCD. (means "anything that gets on the way; obstruction"[WCD] —means "causing of a delay"[AHD]). (2) to hamper (AHD) (means hinder—means "to make difficult for...frustrate"WCD). Johnson did all of the above. Facts show he canceled the meeting, created an impossible situation, and passively ditched LS. When contacted again, he was hesitant, hedging, and reluctant. The result was that LS was upset, said he was leaving town forever, and hung up.(Stmt of Facts). The renounce was done—again!

The State was required, but failed, to disprove the second means of the defense: "prevented the felony." In fact,"prevented" was never mentioned; likely because, when no one is planning on doing a felony, nothing needs to be done to prevent such. Still, all that Johnson did to persuade in KS effectively prevented RN and LS from doing anything. Unlike persuade—a subjective mental impression—a felony is either prevented or not. But the question is not if the evidence shows that Johnson persuaded or prevented; rather, did the State meet their burden of disproving such?

**Conclusion.** The State presented insufficient evidence to disprove Johnson's defense of renunciation. Therefore, Johnson's convictions must be reversed and vacated.

**ISSUE 6.** The district court erred in instructing the jury regarding venue jurisdiction depriving Johnson of his right to require all elements be proved beyond reasonable doubt.

The District Court instructed the jury as to jurisdiction with a non-PIK instruction modeled after KSA 21-5106 and <u>St.v Grissom</u>, CITE. The Court did not instruct the jury as to the required findings related to necessary proof of venue in this matter as required by KSA 22-2603 and 10 KS Bill of Rights such that the State has failed to prove a necessary element beyond a reasonable doubt. See <u>In re Winship</u>,397 US 358(1970). The Court erred as a matter of law in instructing the jury on the law re venue jurisdiction as it failed to instruct the jury as to the necessary findings re venue jurisdiction within JoCo,KS.

**Preserv./Std of Review.** Johnson objected to the proposed instruction on the grounds that it was not PIK and that there was a question as to whether sufficient evidence of criminal conduct occurred in JoCo,KS in light of the defense of renunciation and the events occurring in MO.(R.15,129-30). Jury instructions are subject to a four-part analysis on appeal. A) review for preservation, B) conducts unlimited review to determine if the instruction was legally appropriate, C) reviews evidence in the light most favorable to defendant...for sufficient evidence to support the instruction, D) if harmless. <u>St.v Brammer</u>,301 Kan 333(2015).

**A. Johnson preserved this claim of error for review.** Johnson objected to this instruction; thus, he avoids a clear error burden and this Court may conduct a full review of the legal and factual appropriateness of the instruction for harmless error. <u>Brammer</u>,supra.

**B. The instruction provided to the jury fails to properly state the law.** To be legally appropriate, the instruction must be a fair and accurate statement of the law. <u>St.v Plummer</u>,295 Kan 156(2012). The complained of instruction states as follows:

> *If you find the defendant committed criminal acts in this state which were a substantial and integral part of an overall continuing crime plan, and which were clearly in partial execution of that plan, prosecution may be in this state of any other state in which such acts occur.* (R.1,187:#18).

A court must have both subject matter and personal jurisdiction to establish lawful authority over a case. Two statutes provide the jurisdictional requirements for prosecution within KS. First, the Court must determine if legal jurisdiction is proper by a preponderance of the evidence where an offense is committed wholly or partly within the State.

KSA 21-5106. Second, as a component of jurisdiction, the proper venue within the county where the offense occurred must be proven beyond a reasonable doubt. KSA 22-2603; St.v McElroy,281 Kan 256(2006). See also St.v Hunt,285 Kan 855(2008). Notably, KSA 22-2603 does not distinguish between whether the county is within or outside of KS. Jurisdiction is a question of law; venue is a question of fact for the jury. Id. Lack of jurisdiction is not a waivable defense and may be raised on the first time for appeal. Id.

In this case, the State requested the jury be instructed as to a finding the Court is required to make as a matter of law and failed to provide the proper instruction as to the law as required for the factual component of jurisdiction required to be proven beyond a reasonable doubt by the State. See Winship,supra. In order to find the appropriate venue, the jury must find that two or more acts are requisite to committing the offense and that one of the acts was committed in the county where the case is tried. KSA 22-2603.

Instr. 18 is not legally appropriate nor does it accurately state the law related to the factual findings necessary to the jury's verdict. To the contrary, the court delegated its obligation to establishing jurisdiction under KSA 21-5106 to the jury and failed to instruct the jury to make the findings it must make beyond a reasonable doubt for venue to be proper as required for KSA 22-2603 for cross county boundary determination. As findings related to KSA 22- 5106 are within the purview of the Court under a preponderance of the evidence, it is proper that there is not a PIK instruction. See eg St.v Dias,263 Kan 331(1997)(Use of PIK strongly recommended). Therefore, the instruction as given fails to fairly and accurately state the law and is in error.

The error in Instruction 18 is not cured by the venue element in the offense instruction. The venue provision is incorporated into the offense PIK's. See eg Hunt,supra:PIK 53.090. However, the element instruction does not instruct as to how to determine the proper jurisdiction related to KSA 22-2603 for cross county boundary determination of venue. There is no direction as to how to apply the law as to venue contained within the instructions provided to the jury. (R.1,179-80,JI#9&10). As an inchoate offense, the offense itself is completed prior to the undertaking of the underlying felony and therefore, the offense is completed at the time a felony is

requested. See St.v Moffit,38 Kan.App.2d 414(2007);St.v DePriest,258 Kan 596(1995).As venue is only proper where an offense requires two or more acts and one of the acts occurred in the county of prosecution, and solicitation(as charged) does not require multiple acts for the offense to be completed, an instruction expanding venue to an overall plan paradigm is improper. KSA 21-5303. Therefore, to instruct the jury that an ongoing course of conduct may expand venue to JoCo for an offense that requires only one act (per how charged) is in error and is not remedied by other instructions. Furthermore, as the more specific instruction as to venue, the single line in an elements instruction is wholly insufficient to cure any error related to the improper state-ment of the law separated and expounded upon as in J.I..#18. As the jury is presumed to follow the law as instructed, there is clear error in this matter where the instruction fails to explain the law related to the required element of venue. See eg St.v Race,293 Kan 69(2011).

As the instruction related to a required element of venue fails to properly state the law as applied to whether the offense may be tried in JoCo,KS the jury cannot be presumed to have disregarded the specific instruction in favor of the general line regarding venue as contained in the offense instructions. As the State must prove venue beyond all reason-able doubt, this instruction is infirm and is in error.

**C. If the court examines whether the instruction is factually appropriate in light of legal error, the instruction still fails.** As the crux of the inquiry is whether instructions are fact-ually and legally appropriate, determination of legal error obviates the need for examina-tion as to whether the instruction is factually appropriate before considering whether the er-ror is harmless. Nevertheless, if the Court determines an examination as to whether Inst.18 is factually supported despite the legal error, the Inst. is not supported by the proper appli-cation of facts to the relevant law in this matter. The proper application of law to these facts requires the jury to determine that more than one act is necessary for commission of the of-fense and that one of those acts occurred outside of JoCo. The evidence here does not sup-port a finding of multiple acts. Solicitation (as charged) does not require multiple acts for the commission of the offense, to the contrary, the offense is completed when the felony is

requested or encouraged. Altered KSA 21-5303; <u>DePriest</u>,supra.

Even if multiple acts are required to commit the offense, there is insufficient evidence to support a finding that the offense occurred in JoCo,KS. The exchange of the alleged money and provision of specific info, map, and photo occurred in M0.(R.21.St.5,R.9, 144-7). Also, Johnson presented a defense of renunciation, that he renounced the endeavor in KS and only committed such offense in M0 after contact was re-initiated by LS.

As such, there is insufficient evidence to support giving the instruction as it remains legally and factually inappropriate.

**D. The error in instructing the jury as to venue is not harmless.** As the State is required to prove venue beyond a reasonable doubt, this error is constitutional in nature. 10 KS Bill of Rights (Right to impartial jury of county/district where offense committed); <u>Winship</u>, supra. As such, the State must prove beyond a reasonable doubt that the error in instructing the jury as to the law regarding venue did not affect the verdict in light of the entire record. See <u>St.v Ward</u>,292 Kan 541(2011) citing <u>Chapman v California</u>,386 US 18(1967).

The State cannot meet such burden. There is substantial evidence that Johnson was indecisive as to whether or not he wished to actually solicit the murder, even if viewed in the light most favorable to the State. His indecision caused LS to hang up the phone on him, ask him to clarify what was going on, and 0PD clearly recorded him stating he needed to reconsider everything.(R.9,156-7,R.21,St.2-5). Even if the evidence supports that solicitation was made in JoCoKS, Johnson's subsequent actions constitute renunciation; thus, the meeting in M0 constitutes a wholly separate offense not subject to the venue of JoCo,KS.

The Court is required to review the entire record to determine whether an error is harmless beyond a reasonable doubt. Under the facts and evidence, there is a substantial question as to whether solicitation (as charged) requires multiple acts such that cross county venue allows prosecution in JoCoKS. Also, the waffling of Johnson as evidenced by the recorded conversations, create a real possibility that if instructed properly as to venue, the jury may determine

that he abandoned the solicitations occurring in JoCo. However, as the jury was improperly instructed that an ongoing course of conduct could occur wholly, partly or have results in KS to confer jurisdiction—the alleged solicitation in MO which would result in a homicide of a victim that lived and traveled in JoCoKS—this Court cannot determine beyond a reasonable doubt that the residence and whereabouts of the alleged victim, which are immaterial to conferring venue for solicitation, did not contribute to the jury's verdict. As such, this Court cannot determine beyond a reasonable doubt that the error in this matter is harmless. Therefore, Johnson's convictions must be reversed and remanded for new trial.

**ISSUE 7. The Olathe Police illegally obtained evidence through an investigation and transaction that occurred in KCMO. Therefore, A) OPD illegally exercised their powers outside of their jurisdiction, pursuant to KSA 22-2401, and B) they did so in MO where the conduct Johnson was charged with is not illegal.**

**Preserv./Std.of Review.** "Interpretation of KSA 22-2401 is a question of law...unlimited review." St.v Vrable,49 Kan.App.2d 61,63(2013). Since this was the State's primary evidence, review is determinative of the case and needed to serve the ends of justice, to prevent denial of rights, and to consider if Johnson's conviction was reliant on evidence illegally obtained. Johnson raised the jurisdiction issue (R.1,40-58) and also moved for an acquittal due to such (R.15,88-9). It was an error of the Court to proceed.

**A. OPD had no authority to act outside of their jurisdiction: in Leawood KS and in MO.**

KSA 22-2401(a) states that city officers may only exercise their powers within their own city limits, elsewhere if a request for assistance has been made. Vrable,supra,64. Johnson's case is similar to Vrabel where Prairie Village,KS police set up an undercover drug purchase in Leawood,KS. The District Court suppressed such evidence and stated:

> *(1) No case law has upheld an independent police investigation without cooperation of the other jurisdiction; (2) KSA 22-2401a...does not deal strictly with arrests; (3) no statutory basis exists that allows police to go outside of their jurisdiction to perform unilateral investigations; and (4)...the police used the "color of their office" to initiate the investigation...* Id,63.

Appellate Court reversed, but only because evidence established an agreement between the two jurisdictions to assist each other. Id,68. See St.v Sodders,255 Kan 79(1994)(officers lacked jurisdiction per KSA 22-2401).

In Johnson's case, OPD never spoke to KCM0. And Leawood was only contacted after the M0 meeting.(R.9,126). Multiple OPD supervisors were involved (R.9,161); and, since OPD did the re-initiating, OPD had unlimited prep time. Sgt Sweany agreed that OPD was aware they had no jurisdiction, and stated "If a crime would have been committed in M0 that was an arrestable offense, [KCM0] could have arrested [Johnson].(R.9,128-9). LS agreed: OPD had no jurisdiction or enforcement powers in M0; such issues were "prevalent throughout"; OPD had pre-considered such.(R.9,158-9,128-9).

Illegally, in M0, OPD obtained and seized what LS had requested (map, photo, money) and created a recorded conversation. This violated Johnson's rights provided by the US Constitution Fourth Amendment and 15 of the Kansas Constitution Bill of Rights.

**B. Solicitation in M0 is not illegal: no such statute. The State did not allege or present evidence that Johnson's conduct, even at worst interpretation, was illegal in M0.**

This matter is similar to Sexton,supra,232 Kan,544(no solicitation statute yet. "It's not [the court's] function to create a crime where legislature has not done so"). "There can be no conviction except for crimes defined by statute." Jackson,supra,239 Kan,471.

OPD's Sgt Sweaney was aware of this "not illegal in M0" issue: he told the court, "If a crime would have been committed in M0 that was an arrestable offense, [KCM0] could have arrested [Johnson]."(R.9,129). But here, it simply was not arrestable in M0.

The lesson to be drawn...is that a state court's application of its own law on the ground that it is not in conflict with the law of other jurisdictions is sound only when the lack of conflicts has been satisfactorily studied and established. Atchison v Stonewall,275 Kan 698,728(2003)(quoting unpub appeal, No.75,227 ["lack of conflicts should be established rather than assumed." At*23-4]).

KSA 21-5303 does not prohibit solicitation in a state where there is no same law (no solicitation statute in M0). See Vrabel,supra(question of law, unlimited review). Eg, Hayner v St., 83 Ohio St. 178(1910)(law doesn't state illegal to sell where no law prohibits). Consider how other laws differ between states; eg: tax, marijuana, motorcycle helmets. Had such evidence not been illegally obtained and used in court, there is a real possibility of a different verdict.

**Conclusion.** Evidence was illegally obtained; such came for M0 where Johnson's alleged conduct—even if he did solicit—was not criminal; the State did not allege or present evi-

dence that such conduct was criminal in M0. This violated Johnson's constitutional and

due process rights. Therefore, his convictions must be reversed for retrial consideration.

**ISSUE 8. KSA 21-5303 has 3 alternative means of committing the crime. The State charged 2 but did not show evidence of both as required, and did not provide instruction.**

**Preserv./Std of Review.** "Whether a statute creates alternative means of committing a crime

is a matter of statutory interpretation and construction and is a question of law subject to de

novo review on appeal." St.v Castleberry,301 Kan 170,188(2014). "The overarching ques-

tion presented involves the sufficiency of the evidence...which does not require [court] to

engage in a preservation inquiry."Id. **Analysis.** KSA 21-5303(a) solicitation is "command-

ing, encouraging or requesting another...." Johnson was charged with "encouraged or re-

quested...." Both ways present an alternative means issue. These alternative means were

"not contained in a definitional provision"; they do not merely "elaborate on elements"; nor

are they "secondary matters not giving rise to an alternative means issue."Id,189.

In an element instruction to the jury, the PA stated element No.1 is "encouraged or re-

quested" and added: "There's plenty of encouragements...lots of requests."(R.15,146).

> The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates alternative means issue demanding _super-sufficiency_ of the evidence. St.v Brown,295 Kan 181,199-200(2012).

But, not only was evidence not "super-sufficient," it simply didn't exist for either means.

> Should evidence be lacking on one of the means, however, then guilty verdict fails even though there may be overwhelming evidence of the other means. St.v Schreiner,46 Kan. App.2d 778,782(2011).

**Conclusion.** An alternate means instruction was not given; there was insufficient evidence of

both means. Therefore, Johnson's convictions must be reversed for retrial consideration.

**ISSUE 9. Charges against Johnson are defective: charged crimes are not part of a statute.**

**Preserv./Std of Review.** This issue is a question of law, is determinative of Johnson's case, is a vio-

lation of his constitutional rights (due process/6[th] Amend KS Bill of Rights), and review is needed

to prevent manifest injustice. See Gomez,supra. As such, issue is subjected to unlimited review

(Id.) and has been previously considered (see Sexton,supra-- also basis for summary disposition).

**Analysis.** Johnson was charged with "encouraged or requested...a felony." However, KSA

21-5303 prohibits"encouraging or requesting." See discussion re present participles (-ing verbs)

49

in <u>Johnson's Multiplicity Issue</u>, incl: **1)** "[The US Sup.Ct] does not consider grammar a mere technicality...[<u>Wilson</u>,US]." <u>US v Ketchum</u>,Supra; **2)** changing tense is "indicating a different intent." <u>J.R.</u>,Supra; **3)** past tense verbs are substantially different than ongoing present tense verbs, not interchangeable, as <u>Verizon v Hopewell</u>,Supra, researched, stated, and cited.

If the charging document does not set out the essential elements of the crime, it is fatally defective; conviction must be reversed. <u>St.v Shirley</u>,272 Kan 659,662(2004). All elements "must be determined wholly from the statute." Id,665.

> There can be no conviction except for such crimes as are defined by statute. <u>Sexton</u>. Supra. A statute should not be read to add that which is not contained in the language of the statute...[In doing so] the court drastically change[s] the statutory definition. <u>St. v Dennis</u>,303 P.3d 726 No.101,052 Unpub.at*23-4(ACtKS,July5,2013).

This substantially prejudiced Johnson: changing ongoing (-ing) verbs to one-act finite verbs allowed the jury to, eg, base a verdict on just one act and allowed them to assume that there could be multiple charges of guilt. Furthermore, this allowed them to disregard the characteristics of present participle conduct: must be ongoing, current, more foreseen, etc.

This is also an issue of jurisdiction because Johnson's complaint failed to include an essential element of the crime charged. See <u>St v Portillio</u>,294 Kan 242,251(2012). When an information does not contain an essential element, it renders "the information fatally defective and deprived the trial court of jurisdiction to convict." <u>Id</u>,257.

Furthermore, KSA 21-5303 does not specifically state that "encouraging or requesting..." is illegal. "Solicitation is..." is merely a definition like those found in KSA 21-5111. In contrast, see statutes which clearly state "It shall be unlawful [to]..."; eg, KSA 22-4710; 24-6408; 21-6309; 65-7006(a).

**Conclusion.** Johnson's convictions were based on a non-existent crime; must be reversed.

### CONCLUSION

FOR THESE REASONS, Johnson/appellant requests that Johnson's convictions be reversed and vacated or in the alternative this matter be remanded for new trial.

Respectfully Submitted,

_____.

Rheuben Johnson, 106724 pro-se
EDCF, PO Box 311, El Dorado, KS 67042-0311.


## CERTIFICATE OF SERVICE

I, Rheuben Johnson, do hereby certify that a true coy of the above and foregoing brief was mailed by with the United States postal service on this 3 day of August, 2016, to:


Office of the Attorney General

120 SW 10th Ave 2nd Floor

Topeka, KS  66612-1597


Johnson County District Attorney's Office

100 N Kansas

Olathe, KS  66061


_____.

Rheuben Johnson

The issue before us is whether substantial competent evidence supports a finding that Geist met the statutory element of "causing or encouraging" Meehan to commit the robbery. The appellee's brief is not helpful in addressing this issue. The only evidence supporting the charge was Meehan's testimony, and this testimony does not demonstrate or even suggest encouragement.

There appear to be no Kansas cases expressly defining "encouragement." Black's Law Dictionary 527 (6th ed. 1990) defines "encourage" in criminal law as "to instigate; to incite to action; to give courage to; to inspirit; to embolden; to raise confidence; to make confident; to help; to forward; to advise."

For [*10] this court to find that Geist encouraged Meehan to commit the crime, we would have to adopt a very expansive definition that would make "encouragement" virtually synonymous with aiding and abetting, which is governed by K.S.A. 21-3205. Under the facts of the present case in which Geist was himself a juvenile and the robbery was conceived, proposed, and carried out by the "child" to whose misconduct Geist allegedly contributed, the conviction simply was not supported by the evidence and must be reversed.

*B. "Encouraging" an Undocumented Person to Reside in the United States*

The parties' arguments regarding the crimes involving the encouraging of undocumented persons to reside in the U.S. can be divided into two categories. First, the parties disagree [*13] over the scope of activities the word "encouraging" encompasses. Second, the parties disagree over whether Ovalle's conduct, as alleged by the government, fits into that scope. The court addresses these issues in that order.

Section § 1324(a)(1)(A)(iv) states in full:

> *HN4*⚓"Any person who encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . . shall be punished as provided in subparagraph (B)."

As Ovalle points out, Congress has not defined "encourages" within the statute, and its meaning is ambiguous. Ovalle asserts that the government equates encouraging to mere employment, an interpretation that no court has adopted. Using statutory construction and referring to non-binding authority from other courts, Ovalle urges the court to adopt a high standard requiring "but-for" causation, i.e. but-for the defendant's encouragement, the undocumented person likely would not have remained in the United States. In a response citing no relevant authority, the government cites the standard for "harboring"—which, as discussed above, does not apply here—and [*14] then begs the question by asserting that whatever the standard might be, the defendants' conduct certainly violated it. The first step for the court, then, is to determine the proper standard to apply in this case. As the United States Court of Appeals for the Tenth Circuit, has not yet addressed the issue, the court looks to other circuits for discussion.

[14]The Government submits further that virtual child pornography whets the appetites of pedophiles and encourages them to [***423] engage in illegal conduct. This rationale cannot sustain the provision in question. *HN20*⚓The mere tendency of **speech to encourage** unlawful acts is not a sufficient reason for banning it. The government "cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts." *Stanley v. Georgia,* 394 U.S. 557, 566, 22 L. Ed. 2d 542, 89 S. Ct. 1243 (1969). First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end. The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought.

Finally, the Government says that the possibility of producing images by using computer imaging makes it very difficult for it to prosecute those who produce pornography by using real children. Experts, we are told, may have difficulty in saying whether the pictures were made by using real children or by using computer imaging. The necessary solution, the argument runs, is to prohibit both kinds of images. [*255] The argument, in essence, is that protected speech may be banned as a means to ban unprotected speech. This analysis turns the First Amendment upside down.

[***LEdHR6A] [6B]

[***LEdHR16] [16] $^{HN22}$☂The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse. $^{HN23}$☂"The possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted . . . ." *Broadrick* v. *Oklahoma,* 413 U.S. at 612. $^{HN24}$☂The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.

[***LEdHR12] [12]$^{HN9}$☂It is Congress, and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses. *Brown* v. *Ohio,* 432 U.S. 161, 165 (1977). But once Congress has defined a statutory offense by its prescription of the "allowable unit of prosecution," *United States* v. *Universal C. I. T. Credit Corp.,* 344 U.S. 218, 221 [*70] (1952); *Bell* v. *United* [**2182] *States,* 349 U.S. 81 (1955); *Braverman* v. *United States,* 317 U.S. 49 (1942); *In re Nielsen,* 131 U.S. 176 (1889), that prescription determines the scope of protection afforded by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on this congressional choice. [24]

*Unit of Prosecution Cases.* In the second category of cumulative punishment cases, a double jeopardy issue arises when a defendant is convicted of multiple violations of a single statute.$^{HN13}$☂ In such a case, the statutory definition of the crime determines the minimum scope of the conduct proscribed by the statute. The Court in *Universal C.I.T. Credit Corp.,* 344 U.S. at 221, referred to this as the "unit of prosecution." When the prosecution is based upon the same conduct, there can be only one [**65] conviction for that minimum unit of prosecution. The key to determining the minimum unit of prosecution is legislative intent. See *Ebeling,* 237 U.S. 629 (allowing [***40] six counts when defendant cut six mail bags because "the language of the statute plainly indicates that it was the intention of the lawmakers to protect each and every mail bag from felonious injury and mutilation"); *Bell,* 349 U.S. 81, 75 S. Ct. 620, 99 L. Ed. 905 (under Mann Act Congress intended to punish for action not number of victims); *In re* [*472] *Snow,* 120 U.S. 274, 7 S. Ct. 556, 30 L. Ed. 658 (Congress did not intend to break offense into temporal units); Thomas, 47 U. Pitt. L. Rev. at 55.

The determination of the appropriate unit of prosecution is not necessarily dependent upon whether there is a single physical action or a single victim. Rather, the key is the nature of the conduct proscribed. This concept is illustrated by the holding in *Universal C.I.T. Credit Corp.* The defendant violated the Fair Labor Standards Act through a managerial decision that certain activity did not require overtime payment. Even though there were multiple underpayments to multiple employees during multiple pay periods, the Court determined that Congress intended one punishment for the one managerial decision. 344 U.S. at 224. The unit of prosecution was determined by the scope of the course [***41] of conduct defined by the statute rather than the discrete physical acts making up that course of conduct or the number of victims injured by the conduct.

5. *Unit of Prosecution Cases* As recognized in *Colgate,* [HN30] there is a distinction between multiple [*496] description cases and cases arising when a defendant is charged with multiple violations of a single statute. In a case where a defendant is convicted of multiple violations of a single statute, the test to determine whether the convictions violate § 10 of the Kansas Constitution Bill of Rights is the same test as used to determine if there is a violation of the Due Process Clause of the Fifth Amendment: whether there is more than one conviction for the allowable unit of prosecution.

[HN6] When a defendant is convicted for violating one statute multiple times, the same evidence test will *never* be satisfied. As previously mentioned, the same evidence test asks whether the convicted offenses are the same in law and the same in fact. Two convictions for violating the same statute will always be the same in law, but they will never be the same in fact. In charging two violations of the same statute, the prosecutor will always attempt to distinguish the two charges by dividing the evidence supporting each [*634] charge into distinct segments. *See* Michelle A. Leslie, Note, State v. Grayson: *Clouding the Already Murky Waters of Unit of Prosecution Analysis in Wisconsin,* 1993 Wis. L. Rev. 811, 824 (making this same point to illustrate that the "identical in law and in fact" analysis is not useful in the unit of prosecution [***7] context).

[5] [6] The proper inquiry in this case is what "unit of prosecution" has the Legislature intended as the punishable act under the specific criminal statute. *See Bell v. United States,* 349 U.S. 81, 83, 75 S. Ct. 620, 99 L. Ed. 905 (1955); *State v. Mason,* 31 Wn. App. 680, 685-87, 644 P.2d 710 (1982). The Legislature has the power, limited by the Eighth Amendment, to define criminal conduct and set out the appropriate punishment for that conduct. *Bell,* 349 U.S. at 82. The proper question for this case is what act or course of conduct has the Legislature defined as the punishable act for simple possession of a controlled substance? When the Legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime. *See Bell,* 349 U.S. at 83-84 (double jeopardy violated when defendant convicted on two counts of transporting women across state lines when two women were transported at the same time; [***8] *In re Snow,* 120 U.S. 274, 7 S. Ct. 556, 30 L. Ed. 658 (1887) (double jeopardy violated when defendant convicted on multiple counts of plural cohabitation when the cohabitation was continuous and ongoing). The unit of prosecution issue is unique in this aspect: While the issue is one of constitutional magnitude on double jeopardy grounds, the issue ultimately revolves around a question of statutory interpretation and legislative intent. *See* Peter Westen & Richard Drubel, *Toward a General Theory of Double Jeopardy,* 1978 Sup. Ct. Rev. 81, 113; Note, *Twice in Jeopardy,* 75 Yale L.J. 262, 313 (1965).

[HN7] If the Legislature has failed to denote the unit of prosecution in a criminal statute, the United States Supreme Court has declared the ambiguity should be construed in [*635] favor of lenity. *Bell,* 349 U.S. at 84 ("[I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple [**1075] offenses . . . ."); *see also* [***9] *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221-22, 73 S. Ct. 227, 97 L. Ed. 260 (1952). The United States Supreme Court has been especially vigilant of overzealous prosecutors seeking multiple convictions based upon spurious distinctions between the charges. *Brown v. Ohio,* 432 U.S. 161, 169, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977) ("The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."); *Snow,* 120 U.S. at 282 (if prosecutors were allowed arbitrarily to divide up ongoing criminal conduct into separate time periods to support separate charges, such division could be done ad infinitum, resulting in hundreds of charges).

We now turn to the facts of this case. [HN8] The first step in the unit of prosecution inquiry is to analyze the criminal statute.

*HN6*⤳To prove solicitation, the prosecution must present evidence of the circumstances surrounding the solicitation "strongly corroborative" of a defendant's specific intent to promote or facilitate the commission of the crime solicited. *Id.; People v. Latsis*, 195 Colo. 411, 413-14, 578 P.2d 1055, 1057-58 (1978); *Hood*, 878 P.2d at 94. This requirement helps alleviate the fear that false charges of solicitation may be brought against a defendant either out of misunderstanding or for purposes of harassment. LaFave, *supra*, § 11.1(b), at 193 (noting that such a risk is greater with solicitation than with [**16] other inchoate crimes because solicitation may be committed merely by speaking).

*HN7*⤳Corroborative circumstances of a defendant's intent to facilitate the commission of a crime may span a long period of time. *Aalbu*, 696 P.2d at 805; *Hood*, 878 P.2d at 94. These circumstances include not only the circumstances surrounding a defendant's conversations, but also evidence of a defendant's discussions with other people regarding the commission of a crime. *See Hood*, 878 P.2d at 94.

- It follows that evidence of several communications may be used to corroborate a defendant's intent to facilitate the commission of a crime. Hence, conversations with multiple people regarding a solicitation may constitute a single transaction of solicitation when the prosecution presents those conversations as corroborating evidence of a defendant's intent to persuade someone to commit a felony.

As has been discussed, in unit of prosecution cases the Court applies a rule of lenity. For example, in *Bell*, when left to discern whether Congress intended for the simultaneous transportation of two women across state lines to be one or two violations of the Mann Act, the Court stated: *HN14*⤳"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." 349 U.S. at 83. Although the Court noted that Congress could provide for there to be two convictions for the act, when it had failed to authorize that unit of conviction "clearly and without ambiguity" only one conviction would be allowed. 349 U.S. at 84.

In essence, if multiple convictions arise from violations of a single statute, the definition of the crime must be examined to determine the unit of conduct defined by the legislature. There can be only one conviction for that unit of conduct.

*Id.* at 2. This holding is consistent with the observation of the Tennessee Supreme Court that *HN5*⤳one may not be solicited into soliciting. He is either the solicitor or the solicitee. *State v. Jones*, 598 S.W.2d 209, 221 (Tenn. 1980).

We think the record before us shows a situation identical to that in *Walker*. A fair reading of the record, including the tape recording of the parties meeting, leads this court to the conclusion that if there was solicitation to engage in criminal activity it proceeded from Jones to the defendant, rather than from the defendant to Jones. As in *Walker*, the defendant simply accepted Jones offer to participate in the criminal activity of delivery of a controlled substance. [2] Because Anderson was solicited to accept [**13] the delivery of a controlled substance, Anderson, as the solicitee, cannot also be the solicitor. Under these circumstances, we conclude that Andersons acquiescence and participation in the commission of the criminal offense is insufficient to establish that Anderson *persuaded* Jones to commit the crime, as the word persuade is commonly defined. *See Shannon v. United States*, 311 A.2d 501, 505 (D.C. 1973) (holding that the defendants affirmative response to the undercover officers request for a sexual act was not a solicitation by the defendant); [*374] *State v. Trump*, 381 So. 2d 452, 454 (La. 1980) (holding that where police officers initiated the encounter and at the outset solicited the defendant for prostitution, the defendants eventual quoting of a price did not constitute a solicitation by the defendant); *State v. Jackson*, 381 So. 2d 454, 455 (La. 1980) (holding that the defendants action in calling back the informant who had momentarily turned away to leave was not a sufficient break in the informants solicitation of the defendant to make the defendant the solicitor); *People v. Salazar*, 140 Mich. App. 137, 362 N.W.2d 913, 918 (Mich. Ct. App. 1985) [**14] (holding evidence that defendant merely responded to informants solicitations could not support a finding that defendant urged or persuaded the informant to commit murder). Therefore, we hold that there was